UNITED STATES of America

v.

Wilson ROBERTSON, Jr., a/k/a James Collins, Appellant.

No. 85-6083.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 26, 1986.

Decided Jan. 27, 1987.

Jean M. Scott (appointed by this Court) for appellant.

Barry Coburn, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on brief for appellee.

Before: SILBERMAN and WILLIAMS, Circuit Judges, and JAMESON,* Senior District Judge.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

Appellant challenges his convictions on two drug-related federal offenses as violating two of the time limits imposed by the Speedy Trial Act (the "Act"), 18 U.S.C. §§ 3161–3174 (1982 & Supp. III 1985). First, he asserts that the period between his arrest on July 25, 1984 and his indictment on October 4, 1984 violated the 30-day limit for the period between arrest and indictment. 18 U.S.C. § 3161(b) (1982). The claim fails because it depends upon appellant's erroneous contention that his arrest by District of Columbia officers on a District of Columbia charge started the Speedy Trial clock ticking.

After appellant's trial and conviction on that indictment, a second period of alleged undue delay ensued, namely the stretch between the court's remand of the case to the District Court on July 11, 1985 and the commencement of his retrial on November 11, 1985. Appellant contends that this period exceeds the 70-day limit for the period between an action occasioning retrial and the start of that trial. 18 U.S.C. § 3161(e) (1982). The claim turns on analysis of the Act's "tolling" provisions. 18 U.S.C. § 3161(h) (1982). We find those provisions applicable to the delay resulting from appellant's transportation to this district, even though such transportation proved fu-

tile, and also to the extra time spent on a pretrial motion due to the government's delay in filing its opposition. Accordingly, we affirm the conviction.

## I

On July 25, 1984 a warrant was issued for appellant's arrest on charges of second-degree murder while armed, D.C. Code Ann. §§ 22–2403, 22–3202 (1981 & Supp. 1986). That same day, District of Columbia Metropolitan Police officers spotted appellant and apprehended him after a high-speed car chase through the streets of Northwest Washington. The arresting officers searched appellant's car and discovered a blue nylon bag containing 95 plastic bags of cocaine and another bag containing a loaded shotgun.

The following day, July 26, 1984, appellant was charged in the Superior Court for the District of Columbia with second-degree murder while armed, D.C. Code Ann. §§ 22–2403, 22–3202 (1981 & Supp.1986), and with possession of a controlled substance with intent to distribute, D.C. Code, Ann. § 33–541(a)(1) (Supp.1986). The murder charge was prosecuted in the District of Columbia Superior Court in a proceeding not relevant to this appeal, and the drug charge was dismissed on the government's motion on October 31, 1984.

On October 4, 1984 a federal grand jury indicted appellant for possession with intent to distribute a narcotic drug, 21 U.S.C. § 841(a)(1) (1982), and for carrying a concealed weapon, D.C. Code Ann. § 22–3204 (1981).[1] Appellant alleges that the delay between his arrest on July 25, 1984 and his indictment on federal charges on October 4, 1984 violated the Act.

Section 3161(b) requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the

* Of the United States District Court for the District of Montana, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

1. The United States District Court for the District of Columbia has jurisdiction over any of-

fense under the D.C.Code that "is joined in the same information or indictment with any Federal offense." D.C.Code Ann. § 11–502(3) (1981).

date on which such individual was arrested or served with a summons in connection with such charges." To find a violation in this case requires a conclusion that appellant's arrest by District of Columbia Metropolitan Police officers constituted an arrest "in connection with" the federal charges on which appellant was tried and convicted. The Act does not support that conclusion.

■ It is beyond dispute that § 3161(b) does not prevent the government from indicting a defendant on federal charges more than thirty days after his arrest on similar state charges. *E.g., United States v. Adams,* 694 F.2d 200, 202 (9th Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983); J. Cissell, *Federal Criminal Trials* § 12–1(c)(2), at 347 (1983); R. Misner, *Speedy Trial Federal and State Practice* § 17–2, at 219–221 (1983). "Since the Act applies only to federal prosecutions it is only a *federal* arrest, not a state arrest, which will trigger the commencement of the time limits set in the Act." *United States v. Iaquinta,* 674 F.2d 260, 264 (4th Cir.1982) (emphasis in original). *Accord United States v. Mejias,* 552 F.2d 435, 440–43 (2d Cir.1977), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977); Judicial Conference of the United States, Committee on the Administration of the Criminal Law, *Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended* 4 (1984) [hereinafter *Guidelines* ]. Courts have applied this principle even where the federal charges are based on the very conduct occasioning the state arrest, *United States v. Iaquinta, supra; United States v. Mejias, supra; United States v. Lai Ming Tanu,* 589 F.2d 82, 88 (2d Cir.1978) ("The prosecution in practical effect, though not technically, was the same prosecution."); where the state arrest is the product of a joint state-federal operation, with federal officers participating in every stage of the planning and execution, *United States v. Iaquinta, supra; United States v. Mejias, supra; United States v. Lai Ming Tanu, supra* (joint operation financed entirely by federal government); and where the purpose of the later federal prosecution is to salvage a prosecution after the state authorities ran afoul of state speedy trial limitations, *United States v. Lai Ming Tanu, supra; United States v. Ferrs,* 503 F.Supp. 187 (E.D. Pa.1980), *aff'd without opinion,* 676 F.2d 688 (3d Cir.1982).

■ Thus the only question for this court is whether a District of Columbia arrest should be treated as a state arrest for these purposes. Answering that question in the affirmative is Local Rule 306, the Speedy Trial Plan of the United States District Court for the District of Columbia. The district court promulgated the plan pursuant to the congressional directive that all federal district courts adopt plans providing for "the disposition of criminal cases in accordance with [the Act]." 18 U.S.C. § 3165(a) (1982); Fed.R.Crim.P. 50(b). Section 4 of the plan implements the time limits of § 3161(b) with the following language:

(4) *Time Within Which an Indictment or Information Must be Filed.*

(a) *Time Limits.*

If an individual is arrested or served with a summons and the complaint charges a federal offense to be prosecuted in this court, any indictment or information subsequently filed in connection with such charge shall be filed within 30 days of the arrest or service.

\* \* \* \* \* \*

(c) *Measurement of Time Periods.*

If a person has not been arrested or served with a summons on a federal charge, an arrest on a federal charge will be deemed to have been made at such time as the person (i) is held in custody solely for the purpose of responding to a federal charge; (ii) is delivered to the custody of a federal official in connection with a federal charge; or (iii) appears before a judicial officer in response to a federal charge. A charge of violation of the District of Columbia Code is not a federal charge within the meaning of this subsection, and the time limits of this rule shall not begin to run with respect to a person charged in the Superior

Court of the District of Columbia with a District of Columbia Code offense until such person is charged in this court.

These provisions clearly treat District of Columbia arrests as state arrests for the purposes of § 3161(b),[2] and we believe them to be consistent with the Act. There are at least two sound reasons for analogizing District arrests to state, rather than federal, arrests for these purposes. First, the basic practical reason why state arrests do not trigger the Act is equally applicable to District arrests. "[T]o charge the federal government with these state arrests would be to force immediate federal indictments and trials of state arrestees in joint jurisdiction cases, thereby crowding the federal court calendar in contravention of the purpose of the [Act]." *United States v. Mejias*, 552 F.2d at 442. Pressure to shunt mixed-jurisdiction cases onto the federal side is as objectionable in the District as in the states.

Second, treating District arrests as federal would involve the federal government in District affairs more than Congress has intended. In 1973, Congress adopted the District of Columbia Self-Government and Governmental Reorganization Act, Pub.L. No. 93–198, 87 Stat. 774 (codified at D.C. Code Ann. §§ 1–201 to –295 (1981 & Supp. 1986). One purpose of the Self-Government Act was "to the greatest extent possible, consistent with the constitutional mandate, [to] relieve Congress of the burden of legislating upon essentially local District matters." D.C.Code Ann. § 1–201(a) (1981). As part of the Self-Government Act Congress granted the District's local government legislative power extending "to all rightful subjects of legislation within the District." D.C. Code Ann. § 1–204. The District of Columbia Council has used this power to enact criminal laws, including the statute under which appellant was initially charged. D.C. Uniform Controlled Substances Act of 1981, 28 D.C. 3081. *See Gary v. United States*, 499 A.2d 815 (D.C. 1985) (en banc) (upholding the D.C. Council's power to enact criminal laws), *cert. denied*, — U.S. —, 106 S.Ct. 1470, 89 L.Ed.2d 725, *and* — U.S. —, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986). These locally adopted criminal laws are enforced in the local District of Columbia court system, irrespective of the seriousness of the charge. Congress reasserted its intent that the District's local government operate independently of the federal government by excluding the District's local court system from the coverage of the Act. *See* 18 U.S.C. §§ 3165–3174 (1982 & Supp. III 1985).[3]

Two distinctions may be urged between the state-federal relation and the District-federal one. First, the states are independent sovereigns, *see United States v. Lanza*, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922), while the District most assuredly is not. U.S. Const. art. II, § 8, cl. 17. But the impact of the distinction is ambiguous. On the one hand, courts refusing to treat a state arrest as one covered by § 3161(b) have in part relied upon "dual sovereignty", *e.g.*, *United States v. Mejias*, 552 F.2d at 441–42, so that its absence here partly undermines reliance on such cases. But in another respect the lack of dual sovereignty strengthens the case for treating District arrests as separate: not only would appellant's proposed rule precipitate federal enforcement for the reasons shown above, but that enforcement would, almost certainly, legally preempt District action. *United States v. Alston,* 609 F.2d 531, 537 n. 31 (D.C.Cir.1979) (dictum) (District is not separate sovereign for double jeopardy purposes), *cert. denied*, 445 U.S. 918, 100 S.Ct. 1281, 63 L.Ed.2d 603 (1980). This would in turn exacerbate District-federal

---

**2.** We reject appellant's reading of § 4 of Local Rule 306 as applying only to charges brought in Superior Court and not to arrests underlying those charges.

**3.** *See also* H.R.Rep. No. 93–1508, 93d Cong., 2d Sess. 40, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7401, 7441 ("In short, although the District of Columbia is not totally free of Federal influence ..., the Committee feels it highly inadvisable to embark upon a course of legislative action that increases that influence without close and deliberate scrutiny first being given to all the ramifications thereof.").

conflicts and represent increased federal intrusion into District affairs. Thus, the absence of dual sovereignty, while rendering unavailable an abstract basis for the *Mejias* line of cases, reinforces the practical grounds for inferring that Congress did not intend District arrests to trigger § 3161(b).

A second distinction is that the U.S. Attorney for the District of Columbia prosecutes all major offenses committed in the District, regardless of whether the charge is local or federal. Because of this dual authority, the U.S. Attorney for the District of Columbia has a freer hand than do his counterparts in other districts: he could manipulate the order of arrests, so as to intentionally avoid the Act, without having to obtain the cooperation of an independent local prosecutor. But such manipulation would seem likely to generate conflict between local and federal enforcement officials at levels other than that of prosecutor, who are likely as jealous of their prerogatives as are their opposite numbers in the states. *Cf. United States v. Ferrs*, 503 F.Supp. at 189. Moreover, any assumption of such manipulation would require us to impute questionable ethics to the U.S. Attorney. Thus, the chances of such an abuse appear to be slim—slim enough to make it most unlikely that Congress would have intended the adverse practical consequences of treating the two jurisdictions as one for these purposes.[4]

Nor does this case itself support cynicism in this matter. There is no claim that the delay and shift of jurisdiction resulted from any intent to evade the Act, and nothing in the record would support such a claim.[5]

---

**4.** *See* H.R.Rep. No. 93–1508, 93d Cong., 2d Sess. 40, *reprinted in* 1974 U.S.Code Cong. & Admin. News 7401, 7441 ("It is conceivable that this type of overlapping jurisdiction could result in 'forum-shopping' in an attempt to escape the speedy trial restrictions that will apply to the Federal courts in D.C. if this legislation is enacted. Such a result would be antiethical [sic] to the goals of Federal speedy trial legislation, and the Committee feels that the Congress would have an obligation upon discovering such abuses to remedy the situation through legislation.").

For the reasons stated above we hold that § 4 of Local Rule 306 properly treats District of Columbia arrests as state arrests for purposes of the Act. As there was no federal arrest prior to appellant's indictment on October 4, 1984, clearly there was no violation of § 1361(b).

## II.

Appellant's second allegation of error is that his retrial did not "commence within seventy days from the date the action occasioning the retrial [became] final," as required by § 3161(e).

The retrial arose out of somewhat unusual circumstances. On January 29, 1985 a jury convicted appellant on the federal charge of possession with intent to distribute a narcotic drug, 21 U.S.C. § 841(a)(1) (1982). Appellant promptly appealed his conviction to this court. While the appeal was pending the trial judge certified his intention to order a new trial if the case were remanded. Relying on this certification, this court issued an order remanding the case on July 11, 1985. The trial judge duly ordered a retrial, which commenced on November 7, 1985 and concluded with appellant's conviction on the reduced charges of possession of cocaine, *id.* § 841(a), and conspiracy to distribute (and possess with intent to distribute) cocaine, 18 U.S.C. § 371 (1982). Appellant claims that the delay between remand and retrial exceeded the 70–day limit of § 3161(e). The merit of this claim depends on the date the "action occasioning the retrial [became] final" and the scope of § 3161(h)'s "tolling" provisions for delays resulting from transportation and pretrial motions.

---

**5.** Appellant was arrested by local police officers on the local charge of murder. The narcotics charge resulted solely from the fact that appellant had the misfortune of possessing cocaine at the time of his arrest. The delay that occurred between appellant's arrest on the local charge of murder and his federal indictment on the narcotics charge was no more than that occurring in numerous cases involving joint state-federal operations. *E.g.*, *United States v. Lai Ming Tanu*, 589 F.2d at 83–85 (delay of almost four years); *United States v. Mejias*, 552 F.2d at 440, 442 (delay of approximately 16 months).

## A. *Date on Which Action Occasioning Retrial Became Final*

█ It was not until September 18, 1985 that the trial court issued its retrial *order*, and the government argues that only then did the action occasioning the retrial become final. (On such a view, there could be no violation of § 3161(e), for retrial commenced 49 days later.) Appellant believes the starting date should be July 11, 1985, when this court issued its order remanding the case. We think appellant's view more sound.[6] As a practical matter the remand order had the same effect as an order of this court mandating a retrial. The trial court was committed to retrying the case, and in remanding we expressly relied on its certification of intent to order a retrial. *United States v. Robertson*, No. 85-5567 (D.C.Cir. July 11, 1985). The chance that retrial might abort, if for example the trial court changed its mind, does not distinguish the case from a conventional appellate remand for a new trial. Such remands can similarly run off the tracks, as when the defendant pleads guilty. Therefore the 70-day time limit of § 3161(e) began running on July 11, 1985.[7]

## B. *Tolling Provisions*

Appellant's retrial commenced on November 7, 1985, 119 days after we issued the order remanding the case for retrial.[8] Appellant concedes that the 70-day limit was tolled for 29 of the 119 elapsed days. At issue is whether the tolling provisions of § 3161(h) cover two additional periods: ten days during which appellant was being transported to the District for a trial that never occurred and 15 days during which the government's response to a pretrial motion was pending but overdue.

█ *Transportation.* On August 8, 1985 the trial judge ordered that appellant be transferred from Oxford, Wisconsin, where he was then incarcerated, to the District of Columbia "for the purpose of trial [on the offenses at issue here] on August 15, 1985." Writ of Habeas Corpus Ad Prosequendum, *United States v. Collins*, Crim. No. 84-361 (D.D.C. Aug. 8, 1985). Appellant began his journey on August 15, 1985, the day he was supposed to have been tried, and arrived in the District of Columbia area on approximately August 30, 1985.[9] The trial scheduled for August 15, 1985 never took place and appellant was returned to Wisconsin on October 24, 1985.[10]

Section 3161(h)(1)(H) provides for the exclusion of "delay resulting from transportation of any defendant from another district...." However, "any time consumed in excess of ten days from the date [of] ...

---

6. There is a split of authority as to whether a mandate from an appellate court becomes final on the date it is issued or on the date the trial court receives the mandate. *Compare United States v. Russo*, 550 F.Supp. 1315 (D.N.J.1982) (date mandate issued), *aff'd without opinion*, 722 F.2d 736 (3d Cir.1983), *cert. denied*, 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 179 (1984) *with Guidelines* at 19 (date district court receives mandate). We adopt the view of the court in *Russo*. Congress clearly regards judgments as final at least as of their "entry," for it has provided in 28 U.S.C. § 2101(c) (1982) that a variety of appeals or writs of certiorari, at least some of which require final judgments (*see, e.g.,* 28 U.S.C. § 1257 (1982)), "shall be taken or applied for within ninety days after the entry of such judgment or decree."

7. Our remand order produced the requisite finality whether the "action occasioning the retrial" was the trial court's certification (which

lacked finality until our remand restored jurisdiction in the district court and allowed retrial) or our order itself.

8. The day on which the event triggering the 70-day time limit occurs is not counted against the time limit. *See* Fed.R.Crim.P. 45(a); *Guidelines* at 24-25.

9. While the record does not contain the exact date on which appellant arrived in the District of Columbia, appellant does not dispute the government's assertion that such date was August 30, 1985. *See* Government's Brief at 42, n. 29; Appellant's Reply at 19-20.

10. Appellant was transferred from Wisconsin to the District of Columbia a second time and retrial in fact started on November 7, 1985. The exclusion of this transportation time is not at issue, as such days were in any event excluded by virtue of a pending pretrial motion.

an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." Appellant asserts that because the trial scheduled for August 15 never occurred, the entire delay occasioned by his transportation is unreasonable and thus counts toward the 70–day limit. The record does not support appellant's claim.

The trial judge ordered that appellant be transported for the purpose of trial, as reasonable a purpose as exists. Nothing indicates that the judge, when ordering appellant's transportation, had any reason to believe that appellant would not arrive in time to be tried on August 15, 1985 or that appellant would have to be transported out of the District before his rescheduled trial could take place. Under these facts, the failure of appellant's trial to come off as scheduled does not render the entire transportation time unreasonable. Any other result would place an undue risk on those responsible for coordinating a prisoner's travel and trial. The government claims only ten days and we uphold this exclusion.

■ *Pretrial Motions.* On September 27, 1985 appellant filed a motion to dismiss with the trial court. Under § 6 of Local Rule 306 the government had five days to respond.[11] Fifteen days after the due date, the government filed its opposing papers. The trial court accepted the government's tardy response and, on November 1, denied appellant's motion to dismiss. Although § 3162(h)(1)(F) excludes all "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," appellant asserts that under the Supreme Court's recent decision in *Henderson v. United States,* ── U.S. ──, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), the 15 days during which the government's response was overdue are not excludable.

In *Henderson,* the defendant argued that § 3161(h)(1)(F) excluded only motion-related delays that were reasonable. The Court rejected this argument, holding that the Act exempted all delays, regardless of reasonableness, from the filing of a motion until the court heard the motion or took it under advisement, whichever occurred later.[12] Thus, in *Henderson* itself, the Court excluded the periods (1) from the filing of a motion to suppress until the hearing thereon, and (2) from the hearing until the court received the government's response to the defendant's post-hearing brief, all without inquiry into reasonableness. *Id.* 106 S.Ct. at 1877.

Speaking of the period while the district court was awaiting the parties' posthearing submissions, the Court said that the Act was "designed to exclude all time that is consumed in placing the trial court in a position to dispose of a motion," and that § 3161(h)(1)(F) "excludes time after a hearing has been held where a district court awaits additional filings from the parties that are needed for proper disposition of the motion." *Id.* In reaching these conclusions the Court noted that "Congress clearly knew how to limit an exclusion," pointing to certain explicit requirements of reasonableness. *Id.* at 1875.

With *Henderson's* holding and reasoning so inimical to his position, appellant focuses on the following language of the Court:

Congress clearly envisioned that any limitations [on the delay permitted by § 3161(h)(1)(F)] should be imposed by circuit or district court rules rather than by the statute itself.[9] Such rules, developed pursuant to § 3166(f), should provide the assurance of a speedy disposition of pretrial motions.

---

**11.** The more stringent time limits found in Local Rule 306 supersede the general limitations found in Local Rule 1–9. *See* Local Rule 306, § 1(a) (1986).

**12.** A matter is under advisement when "the court receives all the papers it reasonably ex-

pects" concerning the matter. *Henderson,* 106 S.Ct. at 1876. In *Henderson,* because the court ordered supplemental briefing, the matter did not come under advisement until well after the hearing date.

[9] The dissent relies on district court rules as a basis for invoking petitioners' standard.... The interpretation of the local rule, however, is a matter on which we should defer to the Court of Appeals for the Ninth Circuit. It found no violation of the rule.

*It would be useful in the future for circuit and district court rules to include specific timetables, thereby giving substance to the obligations of prosecutors and defense counsel under the Speedy Trial Act.*

*Id.* at 1875 (emphasis added). Appellant reads the italicized language to mean that § 3161(h)(1)(F) incorporates the time limitations set out in local rules. Under appellant's incorporation theory, time in excess of local time limits would be automatically ineligible for tolling under 3161(h) and thus would trigger Speedy Trial Act sanctions (here, dismissal, *see* § 3162(a)(2)).[13]

Appellant reads the italicized language out of context. The local rule at issue in *Henderson* provided that "[a]ll pretrial hearings shall be conducted as soon after the arraignment as possible, consistent with the priorities of other matters on the court's criminal docket." 106 S.Ct. at 1880 n. 2. Footnote 9 addresses the problems inherent in applying such a nebulous rule. The dissent contended that "[a]lthough this rule does not offer any specific guidance, it is sufficient to invoke the 'reasonably necessary' standard...." *Henderson,* 106 S.Ct. at 1880 n. 2. The majority responded in footnote 9 by deferring to the Ninth Circuit's finding that the local rule had not been violated; it included the italicized language as a plea to local courts to clarify their rules. Footnote 9 by no means adopts the *Henderson* dissent's attempt to incorporate the local time limit into the Act.

More directly relevant is the structure of the Act itself, which refutes appellant's incorporation theory. Section 3166 requires that each plan include information on, among other things, "the effect on criminal justice administration of the prevailing time limits and sanctions" and "the incidence of, and reasons for, the invocation of sanctions for noncompliance with time standards, or the failure to invoke such sanctions, and the nature of the sanction, if any invoked for noncompliance." The express reference to local sanctions indicates that local time limits are to be enforced by local sanctions (potentially including, of course, ones paralleling the Act's sanctions) and not by an automatic incorporation of local rules into the Act.[14]

For the reasons set out above we hold that § 3161(h)(1)(F) does not incorporate the time limits set out in Local Rule 306. Therefore the 15 days during which the government's response was pending but overdue are excluded from the 70–day time limit.

When these days are added to the 29 days appellant concedes to be excluded and the ten days excluded by virtue of appellant's transportation, the sum is 54 tolled days, leaving only 65 untolled days between the date the action occasioning the retrial became final and the commencement of the retrial.

Accordingly appellant's conviction is

*Affirmed.*

---

**13.** It seems most improbable that the drafters of the local rule would have adopted the five-day period had they anticipated that excesses would automatically count towards dismissal under the Speedy Trial Act. Section 16(a) of Local Rule 306 provides: "Except as required by 18 U.S.C. § 3162 and § 5036, failure to comply with the time limits prescribed herein shall not require dismissal of the prosecution."

**14.** Local Rule 306 provides the trial judge with a number of means to ensure compliance with time limits. These sanctions range from dismissal to refusal to accept untimely motions where good cause for the delay is not shown. Local Rule 306, §§ 6, 16(a) (1986). The trial judge elected not to apply any of these sanctions against the government and the wisdom of that decision is not before us.