**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Ronald Albert LASTEED, Defendant-Appellant.**

**No. 86–5952.**

United States Court of Appeals, Eleventh Circuit.

Nov. 24, 1987.

F. Lee Bailey, Daniel Patrick Leonard, Bailey & Fishman, Boston, Mass., (Court appointed), for defendant-appellant.

Leon B. Kellner, U.S. Atty., Samuel Rosenthal, Chief, Crim. Appellate Section, Dept. of Justice, Washington, D.C., Joel M. Gershowitz, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before HILL and VANCE, Circuit Judges, and PROPST,* District Judge.

VANCE, Circuit Judge:

This case presents an intricate timing issue involving a retrial, an interlocutory appeal followed by an intercircuit transfer,

---

* Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama, sitting by designation.

and an uncertain period of excludable delay under the Speedy Trial Act, 18 U.S.C. § 3161. The question is whether the 70 day period following a mistrial within which a defendant must be tried again begins to run when the court of appeals issues its mandate, or when the district court receives the mandate. We affirm the district court's ruling in this case that the clock begins to run against the government upon the district court's receipt of the mandate.

## I.

Appellant Ronald Lasteed was indicted along with Joseph Peeples for mail and wire fraud, inducing interstate travel in execution of a fraudulent scheme, and conspiracy to commit these offenses, in violation of 18 U.S.C. §§ 1342, 1343, 2314, and 371. Appellant was tried originally in October, 1984 in the United States District Court for the Northern District of Texas. On October 10, 1984 the district court declared a mistrial because of prosecutorial misconduct. In August, 1985 the district court in Texas denied defendant's motion to dismiss,[1] but granted defendant's motion to change venue to the United States District Court for the Southern District of Florida. Defendant took an interlocutory appeal of the Texas district court's denial of his motion to dismiss. The United States Court of Appeals for the Fifth Circuit affirmed, refusing to dismiss the indictment. The

Fifth Circuit issued its mandate on March 13, 1986. Appellant contends that the Speedy Trial Act's 70 day period commenced on that date.

The district court in Florida did not receive the Fifth Circuit's mandate until May 19, 1986, more than two months after it was issued.[2] The government contends that the Speedy Trial Act's 70 day period commenced on that date. On June 6 defendant filed a motion to dismiss on Speedy Trial Act grounds, which the district court denied on June 23.

At the second trial, there was evidence that appellant had engaged in a fraudulent scheme to obtain money from investors by falsely representing that he had invented a process for transforming water into combustible fuel.[3] Appellant called the product of this process "Ionagen," and claimed it was a gasoline substitute.[4] There was evidence that appellant made numerous other false statements and misrepresentations relating to his education, background, other investors in the Ionagen process, and governmental interest in his work. The prosecution also produced various wire transmissions and recordings of meetings between appellant and Al Hill, Jr., a potential investor in the scheme.

## II.

Appellant's Speedy Trial Act claim is based on the alleged failure of the govern-

---

1. Defendant argued that the indictment should be dismissed because the mistrial was intentionally provoked by the prosecutor, and the defendant's double jeopardy rights would be violated if he were retried.

2. The district court in Florida was fully aware of the pendency of defendant's appeal before the Fifth Circuit. In an order cancelling a status conference dated January 10, 1986, the district court noted that "counsel for both parties are cautioned to proceed with discovery requirements so as to have the case ready for trial immediately following the decision of the appellate court."

 The mandate was not received until May 19, 1986. Appellant's position is that the 70 day period ended three days later on May 22. Yet on June 3, defendant's counsel acknowledged receiving on May 27 notice from the district court setting trial to commence on June 16, and asked for a continuance. In other words, on June 3, twelve days after counsel for defendant

now argues before this court that the 70 day period expired, he moved for a continuance of the trial. Counsel for defendant cited "scheduling conflicts, the need to prepare and litigate various pretrial motions, the necessity of obtaining and thoroughly reviewing discovery material, and the lack of adequate time to prepare for trial...." Three days later counsel for defendant moved to dismiss for violation of the Speedy Trial Act.

3. Appellant claimed that the process involved "reconstructing" water by separating the hydrogen and oxygen molecules, adding wax from the acacia tree to keep the molecules of the two elements apart, and then mixing in certain undisclosed chemicals.

4. In addition to claiming that Ionagen would virtually eliminate worldwide demand for gasoline, appellant claimed that his discovery would cure cancer and solve the world hunger problem.

ment to retry him within 70 days of the mistrial and appeal. The governing statute, 18 U.S.C. § 3161(e), provides:

> If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final. If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final.... The periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified in this section.

The Act excludes various periods of delay from the time within which the retrial must commence, including delay resulting from any interlocutory appeal. *Id.* § 3161(h)(1)(E). The Act also excludes delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the federal rules of criminal procedure. *Id.* § 3161(h)(1)(G).

This case can be viewed analytically as falling under either of the first two sentences of section 3161(e).[5] There has been both a declaration of a mistrial and an appeal. In either situation, the question is when the date "the action occasioning the retrial becomes final," so that, taking into account the exclusions provided for in section 3161(h)(1), the date the 70 day period ends can be determined.

This court has not squarely faced and resolved the issue of whether for Speedy Trial Act purposes the action occasioning retrial after appeal is the issuance of the mandate by the court of appeals or the receipt of the mandate by the district court. The Fifth Circuit's opinion in *United States v. Cook,* 592 F.2d 877 (5th Cir.), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979), arguably provides support for both positions. Holding that the computation of the time period does not begin when the court of appeals decision is released, the court concluded:

> The district court did not reacquire jurisdiction over Cook's case until the mandate of this court was issued. The district court originally scheduled Cook's retrial to commence within thirty-five days of the receipt of our mandate, well within the sixty-day limitation.

*Id.* at 880. The other courts of appeals are split on the issue.[6]

█ The parties argued this case as essentially a question of when the 70 day period commenced following a mistrial and

---

**5.** Under the first sentence of section 3161(e), the 70 day period commences when the district court declares a mistrial. The delay caused by defendant's appeal of the Texas district court's denial of the motion to dismiss is excludable under section 3161(h)(1)(E). The issue is then when the excludable delay ends and the 70 day period commences again: upon issuance or receipt of the Fifth Circuit's mandate.

Under the second sentence of section 3161(e), the 70 day period commences when the appeal becomes final, and the issue is when the 70 day period commences for the first time: upon issuance or receipt of the Fifth Circuit's mandate. Both lines of analysis are complicated by the fact that section 3161(h)(1)(G), which excludes delay resulting from transfer of a case to another district, may exclude the entire time period from the Texas district court's granting of defendant's motion to change venue on August 30, 1985, to the Florida district court's receipt of the Fifth Circuit's mandate on May 19, 1986.

**6.** The Third and District of Columbia Circuits have held that the date the action occasioning retrial becomes final is the date the court of

appeals issues its mandate. *See United States v. Felton,* 811 F.2d 190, 198 (3rd Cir.1987) (en banc); *United States v. Robertson,* 810 F.2d 254, 259 & n. 6 (D.C.Cir.1987); *United States v. Russo,* 550 F.Supp. 1315, 1319 (D.N.J.1982), *aff'd* 722 F.2d 736 (3rd Cir.1983). The Eighth Circuit has held that the action occasioning retrial is not final until the district court receives the mandate. *See United States v. Gilliss,* 645 F.2d 1269, 1276 (8th Cir.1981). There is conflicting authority in the First and Ninth Circuits. *Compare United States v. Rush,* 738 F.2d 497, 509 (1st Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 2370, 86 L.Ed.2d 269 (1985) (issuance) *and United States v. Ross,* 654 F.2d 612, 616 (9th Cir.1981), *cert. denied,* 455 U.S. 926, 102 S.Ct. 1290, 71 L.Ed.2d 470 (1982) (issuance) *with United States v. Ferris,* 751 F.2d 436, 438–39 (1st Cir.1984) (receipt) *and United States v. Crooks,* 804 F.2d 1441, 1445 (9th Cir.1986) (receipt). The Seventh Circuit has declined to reach the issue. *See United States v. Carreon,* 626 F.2d 528, 532–33 n. 7 (7th Cir.1980).

an appeal, as provided by section 3161(e) in conjunction with the section 3161(h)(1)(E) exclusion. In fact, there is also an issue involving delay caused by the transfer of the case from Texas to Florida, thus triggering a section 3161(h)(1)(G) exclusion. *See, e.g., United States v. Glasser,* 773 F.2d 1553, 1557 (11th Cir.1985); *United States v. Wilson,* 720 F.2d 608, 609–10 (9th Cir.1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). Under either theory, we now hold that the Speedy Trial Act clock commenced not when the court of appeal's mandate was issued on March 13, but when the district court received the mandate on May 19. The government thus retried appellant well within the 70 days required by section 3161(e), and we affirm the district court's denial of appellant's motion to dismiss for violation of the Speedy Trial Act.

Appellant raises two other claims, neither of which merits reversal. Appellant argues first that the district court erred in refusing to allow his proposed in-court experiment. District courts have broad discretion regarding in-court experiments in the presence of the jury. *United States v. Rackley,* 742 F.2d 1266, 1272 (11th Cir.1984). The district court did not abuse its discretion in this case.[7]

Appellant's prosecutorial misconduct claim is more troublesome. The district court in Texas declared a mistrial in the first trial because the prosecution made reference to defendant's British criminal record, even after the district court had instructed the government's attorney not to do so. At the second trial, the government's attorney and agent Alvin Berry of the Federal Bureau of Investigation, having already discussed the case and the conviction of co-defendant Peeples with the local press, proceeded to engage in a similar maneuver. In an unresponsive answer to questioning, Agent Berry stated: "We have already convicted one person of —." The rest of his comment was cut off by defense counsel's objection.

The district court, after a recess, denied defendant's motion for a mistrial. The court believed, however, that the motion was "a serious one" and it gave the court "plenty of trouble."[8] We sympathize with the district court, and agree that the government's antics were inexcusable. The government argued that Agent Berry's comment was inadvertent and referred to a perjury conviction of a friend of another witness in the case. We find this excuse for Agent Berry's remark weak, and note that the credibility of the United States is not enhanced by such explanations.[9] We hold, however, that the prosecution's conduct, though inexcusable, does not require reversal of appellant's conviction.[10]

AFFIRMED.

---

7. Appellant argues in his brief that the district court in essence negated appellant's discovery by judicial fiat. Appellant argues by analogy that "[w]hen Copernicus described his heliocentric universe, he was punished by ecclesiastical courts," and that "public confidence in our judicial process" will be undermined if it turns out Mr. Lasteed has made a legitimate discovery. We find Copernicus' experience in the ecclesiatical courts qualitatively different from Lasteed's experience in the federal district courts. Lasteed was granted a new trial and a change in venue to ensure fairness in his trial. The district court also permitted him to conduct his experiment out-of-court, and call witnesses to testify about the process and the results.

8. The district court correctly instructed the jury several times to disregard the comment. We note, however, that, as appellant argued before the district court, these instructions also com-

pound the problem by reinforcing the inadmissible conviction to the jury. This dilemma highlights the egregiousness of the government's conduct, and shows the difficult position in which such actions by the government place the district court.

9. The United States admits before this court that Agent Berry "shouldn't have said it" and that "it was improper." The facts strongly suggest that Agent Berry, who has a master's degree in public administration, a law degree, and has been with the F.B.I. for 21 years, made the comment deliberately, knowing it was improper. This court is familiar with the competence of the F.B.I., and therefore doubts even more the inadvertence of the incident.

10. *United States v. Griffin,* 778 F.2d 707 (11th Cir.1985), a strikingly similar mail fraud prose-

cution, involved the testimony of an F.B.I. agent, an unresponsive remark, and evidence of the guilt of the defendant's coconspirator. In that case, the F.B.I. agent testified that the government had subpoenaed but could not locate the defendant's coconspirator to testify. The district court then advised the jury that the missing witness had been indicted and adjudicated guilty as a coconspirator. *Id.* at 709. This court reversed the defendant's subsequent conviction because the F.B.I. agent's testimony was irrelevant and unfairly prejudicial, and the district court abused its discretion in admitting evidence of the coconspirator's absence and guilt. *Id.* at 709, 711. This case is sufficiently different from *Griffin* so that Lasteed's conviction does not require reversal. In this case, the district court, rather than tell the jury that Peeples had been convicted, quickly and properly instructed the jury to disregard Agent Berry's comment.