**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Irvin PITNER, Defendant–
Appellant.**

**No. 01–30055.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 2002.

Filed Oct. 10, 2002.

James E. Lobsenz, Carney, Badley, Smith & Spellman, P.S., Seattle, WA, for defendant-appellant.

Susan B. Dohrmann, Assistant United States Attorney, Seattle, WA, for plaintiff-appellee.

Before CANBY, KLEINFELD, and W. FLETCHER,* Circuit Judges.

## OPINION

CANBY, Circuit Judge.

John Pitner was convicted of possession and transfer of a machine gun, 18 U.S.C. § 922(o), and, at a subsequent retrial, of conspiracy to make, possess, receive and transfer destructive devices, 18 U.S.C. § 371. He appeals the possession conviction on the ground that the district court erroneously denied his motion to sever his trial from that of his co-defendants. He appeals the conspiracy conviction on the ground that the court continued the retrial beyond the 70–day period allowed in the Speedy Trial Act, 18 U.S.C. § 3161. He also appeals the district court's refusal in the retrial to give several of his proposed jury instructions. We affirm the possession conviction but reverse the conspiracy conviction because we conclude that the retrial violated the Speedy Trial Act.

### Factual and Procedural Background

Pitner was a member of a group known as the Washington State Militia. The group held meetings at Pitner's house, during which they planned how to protect their community in the event of an armed invasion by the United Nations. Pitner trained the militia members to make pipe bombs, and some of the members thereafter made bombs by following Pitner's instructions.

Along with seven other individuals, Pitner was indicted on various charges including possession and transfer of a machine gun and conspiracy to make, possess, receive and transfer destructive devices. At trial he argued that he lacked the requisite criminal intent because he had never intended the members to make bombs prior to a United Nations invasion, which was expected to come from British Columbia; his bomb-making instructions were to be acted upon only when that event occurred, which it has not. He contended that his teaching was protected by the state and federal constitutions.

More than a month into the trial, one of Pitner's co-defendants, Gary Kuehnoel, offered to testify for Pitner if Pitner's case was severed from the trial of the other six defendants. Pitner moved for severance. The district court denied the motion.

The jury found Pitner guilty of possession and transfer of a machine gun. The jury could not reach a decision on several counts, including the conspiracy count. The district court declared a mistrial on these counts on February 28, 1997, which the parties agree started the 70–day clock under the Speedy Trial Act, 18 U.S.C. § 3161(e). On March 27, 1997, the district court set retrial for June 23, 1997, granting an "ends of justice" continuance under § 3161(h)(8)(A) for the period from May 9, the seventieth day, until the retrial date. A grand jury subsequently issued a superseding indictment charging Pitner with conspiracy only.

On May 14, 1997, Pitner challenged the new indictment on double jeopardy

---

* Judge Henry Politz was originally a member of this panel and heard argument in this case. He died prior to circulation of this opinion, and pursuant to General Order 3.2(g), Judge William A. Fletcher was drawn as a replacement. Judge Fletcher was provided with a tape of the oral argument as well as the briefs and other materials received by the other members of the panel.

grounds. The district court rejected his challenge and Pitner took an interlocutory appeal, which we dismissed for lack of jurisdiction. *United States v. Pitner*, 211 F.3d 1275 (9th Cir.1999). Pitner requested a rehearing and rehearing en banc. Both requests were denied, and our mandate dismissing his interlocutory appeal issued on June 29, 2000. The district court and Pitner's attorney began counting the 70–day Speedy Trial clock on this day for the second trial. Accordingly, they believed that the new trial had to begin by September 7, 2000, absent any excludable delays.[1] The retrial was set for August 21, 2000. Following a July status conference, the district court continued the trial until November 27, 2000, pursuant to 18 U.S.C. §§ 3161(e) and 3161(h)(8)(A).

On October 17, Pitner filed a motion to dismiss for violation of the Speedy Trial Act.[2] The district court denied the motion on the first day of trial, which commenced as scheduled on November 27, 2000. At the end of the trial, the jury found Pitner guilty of conspiracy. On January 5, 2001, Pitner was sentenced to 46 months in prison. Because he had already served just over 46 months, he was immediately released.

## Discussion

*The First Trial*

■ The only issue from the original trial concerns the district court's denial of the severance motion. We review for an abuse of discretion the district court's decision on a motion for severance. *United States v. Rousseau*, 257 F.3d 925, 931 n. 5 (9th Cir.2001).

■ Pitner's motion for severance was based on co-defendant Kuehnoel's offer, made well into the trial, to testify in Pitner's favor if Pitner's trial was severed. To succeed in his appeal on the severance issue, Pitner must show "(1) that he would [have called] the [co]defendant at a severed trial, (2) that the codefendant would in fact [have testified], and (3) that the testimony would [have been] … substantially exculpatory." *United States v. Reese*, 2 F.3d 870, 892 (9th Cir.1993) (internal quotations omitted). The district court was required to consider the weight and credibility of the proposed testimony and the economy of severance. *United States v. Castro*, 887 F.2d 988, 998 (9th Cir.1989).

■ Pitner claimed that, had the trials been severed, Kuehnoel would have testified that Pitner did not ever touch, possess, see, or pay money for the purchase of the particular gun at issue in the gun charge. Although this carefully-described testimony, if given, arguably would have favored Pitner, it was not "substantially exculpatory" within the meaning of *Reese*, 2 F.3d at 892. A taped conversation was admitted at trial in which Pitner stated that he had a fully automatic Uzi he was willing to sell. The other party to the conversation, a cooperating witness, testified that Pitner told him to get the weapon from Kuehnoel, and that Kuehnoel thereafter delivered the Uzi to the purchaser. Pitner was charged with aiding and abetting, and could easily have facilitated the transfer of the machine gun without actually touching, seeing, possessing or paying money for it. Under *Reese*, testimony is not "substantially exculpatory" if it refutes only portions of the government's case, and leaves unaffected other evidence sufficient to convict. *Id.* (citing *United States*

---

1. Pitner's attorney originally calculated the 70–day period to end on September 11, 2000. This difference has no effect on the outcome of our decision.

2. The Speedy Trial Act claim is related to the retrial on conspiracy charges only.

*v. Mariscal,* 939 F.2d 884, 886 (9th Cir. 1991)). Moreover, the district court must consider the "possible weight and credibility of the predicted testimony, the probability that such testimony will materialize, [and] the economy of a joint trial." *Mariscal,* 939 F.2d at 885 (internal quotation and citation omitted); *see also United States v. Little,* 753 F.2d 1420, 1447 (9th Cir.1984). Here the offer of codefendant Kuehnoel's testimony came nearly at the end of a trial lasting more than a month. In light of the circumscribed nature of the offer, its source, and its timing, the district court did not abuse its discretion in denying the motion for severance.

### The Second Trial

■ We review de novo a district court's application of the Speedy Trial Act and its decision on a motion to dismiss for noncompliance with the Act. *United States v. Lam,* 251 F.3d 852, 855 (9th Cir.2001).

The parties and the district court in this case labored under a misconception regarding the effect of Pitner's interlocutory appeal on the calculation of his Speedy Trial Act deadline. They assumed that, at the conclusion of the appeal, a new 70–day period began. The Act and our precedent are to the contrary.

The district court declared the mistrial on February 28, 1997. At that point, the parties and the district court correctly assumed that the mistrial started the 70–day clock. *See* 18 U.S.C. § 3161(e).[3] Barring excludable time, trial accordingly was required to commence no later than May 9, 1997. On March 27, 1997, the district court granted an "ends of justice" continuance, unchallenged in this appeal, under § 3161(h)(8), effective from May 9, the 70th day after the declaration of the mistrial, until a projected trial date of June 23, 1997. If the trial had occurred as scheduled in June, the continuance would have prevented a violation of the Speedy Trial Act. On May 14, 1997, however, Pitner moved to dismiss the indictment on double jeopardy grounds. The district court denied this motion on June 10, 1997, and on June 11 Pitner appealed.

The effect of this interlocutory appeal was to *interrupt,* not to restart, the running of the 70–day clock. Section 3161(h) sets forth periods of excludable delay, and includes "delay resulting from any interlocutory appeal." 18 U.S.C. § 3161(h)(1)(E). We applied this provision in *United States v. Crooks,* 804 F.2d 1441 (9th Cir.1986), *modified,* 826 F.2d 4 (9th Cir.1987), where a mistrial was declared, a retrial ordered, and an interlocutory appeal followed. We pointed out that "[i]nterlocutory appeals interrupt the seventy day period; they do not start it running."

---

**3.** The district court declared a mistrial on February 28, 1997, but did not set a date for "retrial following mistrial" until March 27, 1997. Section 3161(e) provides:

> If the defendant is to be tried again following a declaration by a trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final.

We conclude that the declaration of the mistrial, not the order setting the retrial date, was the "action occasioning retrial." The statute's reference to trial following an order for "new trial" refers to the granting of a motion for new trial or its equivalent, which would upset a verdict of conviction and occasion a new trial. In that event, the Speedy Trial Clock would begin to run from the court's order. When, as here, the court has ordered a mistrial because of a hung jury, the declaration of mistrial starts the clock.

It is true that, in *United States v. Crooks,* 804 F.2d 1441 (9th Cir.1986), *modified in other respects,* 826 F.2d 4 (1987), we stated that "[t]he district court's order, not the dismissal of the jury, constituted the action occasioning the new trial," *id.* at 1445, but in that case the district court had declared a mistrial and entered an order for new trial at the same time. *See id.* at 1444. Our conclusion is therefore consistent with *Crooks* on this issue.

*Id.* at 1445. The Second Circuit has come to the same conclusion in a case that parallels the present one, both on its facts and in the parties' misperception of the rule. *United States v. Rivera,* 844 F.2d 916 (2d Cir.1988). The Second Circuit stated:

> In this case defendants' concession that the "action occasioning the retrial" was this court's affirmance of the district court's denial of their double jeopardy motions is not accurate, because the "action occasioning the retrial" was the district court's grant of the mistrial motion on March 26, 1986.

*Id.* at 919.

The misinterpretation of the parties and district court in this case arose from the following language in § 3161(e):

> If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final....

18 U.S.C. § 3161(e). One possible interpretation of this language is that the appellate decision itself is the "action occasioning the retrial," so that it starts a new 70–day period. The Fifth Circuit has adopted this view in cases where the interlocutory appeal was connected closely to the mistrial ruling. *See United States v. Kington,* 875 F.2d 1091, 1109 (5th Cir. 1989) (restarting clock after appeal when the mistrial was "declared for the very purpose of permitting the appeal"); *see also United States v. Lasteed,* 832 F.2d 1240, 1242–43 & n. 5 (11th Cir.1987) (recognizing two views of time computation after mistrial and interlocutory appeal, but apparently restarting clock after appeal). ■ We cannot agree that § 3161(e) permits the Speedy Trial clock to restart

upon the decision of an interlocutory appeal following a mistrial. An interpretation of § 3161(e) that restarted the clock after an appeal would be quite correct when the appeal overturned a judgment of conviction entered by the trial court; the appellate decision then would have caused a retrial when none would have otherwise occurred. But in the present circumstances, when a retrial was already ordered and the interlocutory appeal sought merely to abort it, the "action occasioning the retrial" was the mistrial order, as we and the Second and Fourth Circuits have ruled.

■ Our opinion in *Crooks* may have contributed to the confusion of the parties and the district court in this case. Although in *Crooks* we ruled that an interlocutory appeal after a mistrial merely interrupted the running of the Speedy Trial clock, and did not trigger a new period, we used § 3161(e) as an analogy to determine when time commenced running again after the decision of an interlocutory appeal.[4] The analogy was to cases in which the appeal *was* the action occasioning the retrial, and we determined that it became "final" on the receipt of the mandate by the district court. *Crooks,* 804 F.2d at 1445. We later modified that ruling to make the date of issuance, not the receipt, of the mandate the crucial point at which the interrupted Speedy Trial clock started running again. Although the analogy employed by *Crooks* may have led to some confusion, there can be no doubt about either the wording of *Crooks'* holding or its rationale: an interlocutory appeal after a mistrial only interrupts the running of the Speedy Trial clock for the retrial; it does not restart the clock.[5] *See id.*

---

4. Another factor that can lead to a misreading of *Crooks* was the fact that none of the 70 days had been used at the time of Crooks' interlocutory appeal. Thus, even after "interruption" for an interlocutory appeal, the entire 70 days remained and could be counted from the issuance of our mandate. *See Crooks,* 804 F.2d at 1446.

5. We understand the problems that the interlocutory appeal rule may pose for the district

■ It remains to apply our rule to the facts of this case. The district court declared a mistrial on February 28, 1997. The 70–day period would have expired on May 9, 1997. On March 27, 1997, the district court entered an "ends of justice" continuance, not challenged in this appeal, under § 3161(h)(8)(A) effective on May 9, 1997. The record reflects no excludable time prior to May 9. That continuance remained in effect until June 23, 1997, by which time Pitner had commenced his interlocutory appeal. The "ends of justice" continuance ran out while the appeal remained pending. The appeal itself caused an exclusion of time until the issuance of our mandate on June 29, 2000. The 70–day period expired immediately upon the issuance of our mandate because the entire 70 days had been used up on the effective date of the district court's original continuance.

The district court, erroneously believing that a new 70–day period had commenced, set August 21, 2000, as the date of retrial. On July 26, 2000, the court entered an order continuing the trial until November 28, 2000, on two grounds: (1) the "ends of justice" under § 3161(h)(8)(A), and (2) the "unavailability of witnesses or other factors resulting from the passage of time" after an appeal, under § 3161(e).

■ It was clearly too late for the "ends of justice" continuance to prevent or cure the violation of the Speedy Trial Act's 70–day requirement. We have held that, when a district judge mistakenly continues

a trial beyond the Speedy Trial Act deadline and only later considers whether the "ends of justice" required a continuance, the Act is violated and the indictment must be dismissed. *United States v. Frey*, 735 F.2d 350, 352 (9th Cir.1984); *United States v. Engstrom*, 7 F.3d 1423, 1426–27 (9th Cir.1993).

■ Section 3161(e) also fails to support a continuance that would cure the Speedy Trial Act violation in this case. The statutory language in question is:

> If the defendant is to be tried *again* following an appeal or collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for *retrial* not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical.

18 U.S.C. § 1361(e) (emphasis added). As we have indicated above, this language is designed for situations when an appeal or collateral attack has caused a retrial. It is not suited for application to interlocutory appeals. Interlocutory appeals may occur immediately prior to (or even during the course of) a defendant's one and only trial. After the decision on appeal in such a case, the district court would not have the option of extending the 70 day period to 180

court in a case like this one, where no time remains in the 70–day period at the time the notice of appeal is filed. If a trial was about to begin on that 70th day, the appeal interrupts the process and it may be difficult to reassemble witnesses and commence the trial the instant our mandate issues. Thus it may be inconvenient that the appeal only interrupts, and does not restart, the running of the 70–day period. The Act and our precedent require that result, however. Its conse-

quences may be mitigated by the fact that, during an interlocutory appeal, the district court retains jurisdiction to address aspects of the case that are not the subject of the appeal. *See Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir.1982). The district court thus can make arrangements for prompt trial after remand, *see Lasteed*, 832 F.2d at 1241 n. 2, and possibly can anticipate proper grounds for continuance.

days under § 3161(e), because that statute in terms applies only to a defendant who is to be tried "again"; it provides only for setting of a "retrial." There is no sound reason why an interlocutory appeal should provide an option of 180 days when the interlocutory appeal happens to occur in connection with a second trial but not when it occurs in connection with a first trial. To avoid such an illogical result, which could not have been intended by Congress, the crucial sentence of § 3161(e) must be read as applying only to retrial occasioned by a decision on appeal (or collateral attack). As we said in *Crooks*, "[s]ection 3161(e) is not literally applicable to interlocutory appeals; it refers to appeals requiring a retrial." *Crooks*, 804 F.2d at 1445. We conclude, therefore, that the district court's extension of the 70–day limit because of the unavailability of witnesses or other factors resulting from the passage of time was not authorized by § 3161(e).[6]

Pitner's retrial was not held within the time required by the Speedy Trial Act. We therefore reverse his conviction on the conspiracy count, and remand with instructions to dismiss the indictment. *See United States v. Lloyd*, 125 F.3d 1263, 1271 (9th Cir.1997). Pitner forcefully argues that we should direct a dismissal with prejudice because the delay of his trial caused him to serve more than his sentence, and because a dismissal without prejudice would leave him possibly to face a third trial. We leave to the district court, however, the determination whether the dismissal of the indictment should be with or without prejudice.[7]

*Conclusion*

Pitner's conviction of possession of a machine gun, resulting from his first trial, is affirmed. Pitner's conviction of conspiracy, resulting from his second trial, is reversed and remanded with instructions to dismiss the indictment.

**AFFIRMED in part; REVERSED in part; and REMANDED with instructions.**

6. Our decision makes it unnecessary to review the findings upon which the district court based its extension under § 3161(e), but we note our considerable doubts on that score. The finding of unavailability of witnesses was posited on the fact that some witnesses resided out of the district, and the finding on factors resulting from passage of time was based on routine scheduling conflicts of counsel and the existence of plea negotiations.

7. Our disposition of the Speedy Trial issue makes it unnecessary for us to address Pitner's constitutional challenges to the jury instructions in his second trial.