UNITED STATES of America,
Appellant,

v.

Albert E. MILLS.

UNITED STATES of America,
Appellant,

v.

Kenneth B. WONSON.

UNITED STATES of America,
Appellant,

v.

Vernon L. HOLLAND.

Nos. 90–3007, 90–3008 and 90–3026.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 7, 1990.

Decided Feb. 8, 1991.

John R. Fisher, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Thomas E. Zeno, Patrice I. Kopistansky, Washington, D.C. and James A. Meade, New York City, Asst. U.S. Attys., were on the brief, for appellant in 90–3007, 90–3008 and 90–3026. Thomas J. Tourish, Jr., Washington, D.C., Asst. U.S. Atty., also entered an appearance for appellant.

Alan P. Bayles, Washington, D.C., (appointed by the Court), was on the brief for appellee Albert E. Mills in 90–3007.

Robert H. Tiller (appointed by the Court), with whom Richard G. Taranto and Alan E. Untereiner, Washington, D.C., were on the brief, for appellee Kenneth B. Wonson in 90–3008.

Thomas Abbenante (appointed by the Court) and Mary E. Davis, Washington, D.C., were on the brief for appellee Vernon L. Holland in 90–3026.

David A. Reiser, Atty., Public Defender Service of the District of Columbia, with whom James W. Klein and Rosemary Herbert, Attys., Public Defender Service, Arthur B. Spitzer and Elizabeth Symonds, Washington, D.C., American Civ. Liberties Union, were on the joint brief, for amici curiae urging that the Orders dismissing indictments be affirmed.

Before MIKVA, Chief Judge, and EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This appeal raises statutory and constitutional challenges to the authority of the United States Attorney for the District of Columbia to "transfer" criminal cases from the District of Columbia courts to U.S. District Court. The three appellees in these consolidated appeals were initially charged in District of Columbia Superior Court, but those charges were later dropped in favor of a subsequent prosecution in federal court for the same criminal conduct, effectively "transferring" the cases from one court system to the other. With respect to one of the appellees, a federal indictment was not filed until more than a year after his arrest; with respect to the other two appellees, the federal indictments were filed more than seven months after arrest.

In the federal forum, the appellees contended that the transfer of their cases and the delay occasioned by it violated the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.* (1988), the due process clause of the Fifth Amendment and the speedy trial clause of the Sixth Amendment. The federal trial court dismissed all charges against the appellees after finding violations of the Speedy Trial Act and the due process clause. *See United States v. Holland,* 729 F.Supp. 125 (D.D.C.1990); *United States v. Roberts,* 726 F.Supp. 1359 (D.D.C.1989). Having found for the appellees on those grounds, the trial court did not reach the appellees' Sixth Amendment claim.

At oral argument before this court, the appellees focused their arguments upon the Speedy Trial Act and Sixth Amendment claims, leaving aside much of the District Court's reliance on the due process clause. Although we reverse the District Court's judgments premised on the Speedy Trial Act and the due process clause, we remand for fuller consideration of the appellees' claim that the processing of their cases violated the speedy trial clause of the Sixth Amendment.

I. BACKGROUND

The three appellees in these consolidated appeals, Vernon L. Holland, Albert E. Mills and Kenneth B. Wonson, were each arrested in the District of Columbia ("District" or "D.C.") for possession of cocaine with intent to distribute. The U.S. Attorney for the District of Columbia, who acts as the chief prosecutor in both the D.C. courts and the federal courts for the District of Columbia, elected initially not to prosecute the three men in federal court and instead indicted each appellee in D.C. Superior Court for violations of the D.C.Code.[1] In April 1989, the same month in which appellees Holland and Mills were indicted in Superior Court, high-ranking officials in the Bush administration announced a new initiative to crack down on drug-related crime in the nation's capital. As part of that effort, officials adopted a new policy to bring more D.C. drug cases in federal court in order to take advantage of the stricter penalties available under the federal sentencing guidelines. Accordingly, the U.S. Attorney's office reviewed case files pending in Superior Court with an eye toward transferring the more serious cases to the federal system. The Assistant U.S. Attorney in charge of the review stated that cases were selected on the basis of criteria relating, among other things, to the gravity of the offense, the defendant's criminal history and the amount of drugs involved. *See Holland,* 729 F.Supp. at 127. Federal indictments were then sought in each case and, unless the defendant obviated the need to do so by pleading guilty, the cases were dismissed in Superior Court before trial and brought anew in federal District Court.

Sometime in May or June of 1989, the appellees' cases were selected for "transfer" to federal court. The U.S. Attorney's office obtained federal indictments against the appellees based on exactly the same conduct underlying the D.C. charges and, as their Superior Court trial dates approached, had the D.C. charges dismissed

---

**1.** All three appellees were charged with violating D.C.CODE ANN. § 33–541 (1988) (possession of cocaine with intent to distribute). In addition, Wonson was charged with assault on a police officer in violation of D.C.CODE ANN. § 22–505(a) (1988). *See Roberts,* 726 F.Supp. at 1362.

in order to pursue the federal charges.[2] The sequence of events with respect to each of the appellees was as follows:

| Defendant | Arrest | Indictment in Superior Ct. | Decision to "Transfer" | Indictment in Federal Ct. | Dismissal of Charges in Superior Ct. |
|---|---|---|---|---|---|
| Wonson | 9/5/88 | 3/15/89 | 5 or 6/89 | 9/12/89 | 10/11/89 |
| Mills | 2/16/89 | 4/19/89 | 5 or 6/89 | 9/21/89 | 10/17/89 |
| Holland | 2/16/89 | 4/19/89 | 5 or 6/89 | 9/21/89 | 10/17/89 |

After the cases reached federal court, however, the trial judge dismissed charges against two of the appellees—Albert Mills and Kenneth Wonson—on the grounds that the delay incident to the transfers violated the Speedy Trial Act and that the transfers more generally offended due process. *See Roberts*, 726 F.Supp. at 1377. After a subsequent hearing, the court "reaffirm[ed]" its earlier conclusions and dismissed charges against the third appellee, Vernon Holland, on the same grounds. *See Holland*, 729 F.Supp. at 132.

The trial court's conclusion that the *Speedy Trial Act* had been breached was founded upon a straightforward reading of the statute, which requires that a federal indictment be filed within 30 days of an arrest "in connection with such charges." 18 U.S.C. § 3161(b) (1988). Because the federal indictments came many months after the arrests of Holland, Mills and Wonson, the trial court ruled that the charges had to be dismissed. *See Roberts*, 726 F.Supp. at 1371–72.

The trial court's conclusions concerning the *due process clause* were more wide-ranging. The court's opinions suggested that the timing of the transfers, following closely upon the defendants' rejection of Government plea offers in Superior Court, might betray an abuse of prosecutorial power. *See Holland*, 729 F.Supp. at 128; *Roberts*, 726 F.Supp. at 1369–70. The court also suggested that due process might be offended by the "arbitrary" way in which the prosecutor appeared to select cases for transfer and by the fact that prosecutors did not immediately reveal to defendants their intention to transfer the cases. *See Holland*, 729 F.Supp. at 129–30; *Roberts*, 726 F.Supp. at 1372. The District Court's principal concern, however, was that defendants would be subject to much harsher and more certain criminal penalties as a result of the transfers.

In focusing on sentencing under federal versus local statutes, the trial court found that the Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 1987, and the sentencing guidelines promulgated pursuant to it, violated due process by diminishing judicial discretion in sentencing and by enhancing the ability of prosecutors to influence sentencing through the selection of charges. "In short," the District Court found that "the prosecutor's selection of the charges available to him from his large arsenal amounts ... to an almost totally precise selection of the ultimate sentence to

**2.** Wonson was indicted in U.S. District Court on September 12, 1989, on charges of violating 21 U.S.C. §§ 841(a) & (b)(1)(A)(iii) (1988) (possession with intent to distribute 50 grams or more of cocaine base) and D.C.Code Ann. § 22–505(a) (1988) (assault on a police officer). Charges against Wonson in D.C. Superior Court were dismissed on October 11, 1989, on a Government motion. *See Roberts*, 726 F.Supp. at 1362.

Holland and Mills were each indicted in U.S. District Court on September 21, 1989, on charges of violating 21 U.S.C. §§ 841(a) & (b)(1)(B)(iii) (1988) (possession with intent to distribute five grams or more of cocaine base) and 18 U.S.C. § 2 (1988) (aiding and abetting). Superior Court charges against the two were dismissed on October 17, 1989, following a request by the Government. *See id.; Mills v. United States*, 566 A.2d 1073 (D.C.1989).

be imposed upon conviction or plea of guilty." *Roberts,* 726 F.Supp. at 1365. This power, combined with sharply restricted judicial ability to depart from the sentences prescribed in the federal guidelines, "has had the effect of disturbing the due process balance essential to the fairness of criminal litigation." *Id.* at 1363. It was this unconstitutional enhancement of prosecutorial power in the federal forum, the court concluded, that was "the principal vice" of the case transfers to federal court. *See id.* at 1372; *Holland,* 729 F.Supp. at 130–31 (prosecutor's unconstitutional influence over sentencing in federal court is "[e]qually important, if not more so[,]" to the court's conclusion that case transfers to that forum also violate due process).

The Government now appeals from the District Court's orders dismissing all charges against the appellees.

## II. ANALYSIS

### A. *The Speedy Trial Act*

■ The Speedy Trial Act requires that

[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested ... in connection with such charges.

18 U.S.C. § 3161(b) (1988). If the indictment is not brought within 30 days of that arrest, the federal charges must be dismissed. 18 U.S.C. § 3162(a)(1) (1988).

The District Court found that the appellees' federal indictments violated the Speedy Trial Act because they came many months after the appellees' arrests. *See Roberts,* 726 F.Supp. at 1371. Essential to the District Court's conclusion, of course, was its preliminary finding that the appellees' original arrests qualified, within the meaning of the statute, as arrests "in connection with" the subsequent federal charges. Several circuit courts of appeals have held that when a criminal defendant is apprehended in a "state arrest"—*i.e.,* an arrest by nonfederal authorities on charges of violating state criminal statutes—the Speedy Trial Act "clock" does not begin to run until federal charges are actually filed. *See, e.g., United States v. Charles,* 883 F.2d 355, 356 (5th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 750, 107 L.Ed.2d 767 (1990); *United States v. Taylor,* 814 F.2d 172, 174–75 (5th Cir.), *cert. denied,* 484 U.S. 865, 108 S.Ct. 186, 98 L.Ed.2d 138 (1987); *United States v. Carlson,* 697 F.2d 231, 235 (8th Cir.1983); *United States v. Iaquinta,* 674 F.2d 260, 264 (4th Cir.1982); *United States v. Lai Ming Tanu,* 589 F.2d 82, 87–88 (2d Cir.1978); *United States v. Mejias,* 552 F.2d 435, 441 (2d Cir.), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977). Thus, for example, if a defendant is arrested in a joint state-federal sting operation which leads to state criminal charges, a federal indictment arising out of the same conduct need not be filed within 30 days of the initial arrest. *See, e.g., Charles,* 883 F.2d at 356; *Iaquinta,* 674 F.2d at 267–68; *Lai Ming Tanu,* 589 F.2d at 88.

This circuit has held that, for purposes of the Speedy Trial Act, "a District of Columbia arrest should be treated as a state arrest" so that a federal indictment need not be brought within 30 days of a defendant's apprehension if that arrest was initially premised upon violations of the D.C. Code rather than federal law. *See United States v. Robertson,* 810 F.2d 254, 256 (D.C.Cir.1987). In *Robertson,* the defendant had been apprehended by D.C. police on charges of second-degree murder (an offense that could be prosecuted only in the D.C. courts). During the course of the arrest, officers discovered a large cache of narcotics in Robertson's automobile. Robertson was charged in D.C. Superior Court on the murder count and on the drug counts. The drug counts were later dismissed, however, in favor of a federal indictment on the same offense—an indictment that came more than 10 weeks after Robertson's arrest. This court held that the initial apprehension of Robertson was a "District arrest" and not a federal one, even though it eventually gave rise to the federal charges, and therefore did not trigger the Speedy Trial Act. The court wrote:

It is beyond dispute that ... [the Speedy Trial Act] does not prevent the

government from indicting a defendant on federal charges more than thirty days after his arrest on similar state charges. "Since the Act applies only to federal prosecutions it is only a *federal* arrest, not a state arrest, which will trigger the commencement of the time limits set in the Act." Courts have applied this principle even where the federal charges are based on the very conduct occasioning the state arrest, where the state arrest is the product of a joint state-federal operation, with federal officers participating in every stage of the planning and execution, and where the purpose of the later federal prosecution is to salvage a prosecution after the state authorities ran afoul of state speedy trial limitations.

Thus the only question for this court is whether a District of Columbia arrest should be treated as a state arrest for these purposes. [We a]nswer[ ] that question in the affirmative....

*Id.* at 256 (citations omitted; emphasis in original).

*Robertson* controls the statutory question presented in this case. Holland, Mills and Wonson were each arrested by D.C. police and then presented and indicted in D.C. Superior Court on charges of violating D.C. law. Under *Robertson*, the fact that the later federal indictments were based upon the very conduct underlying the initial D.C. charges is immaterial. By *Robertson*'s measure, these are "District arrests" and do not trigger the Speedy Trial Act clock.

The appellees and *amici* argue vigorously that *Robertson* was wrongly decided. They point out that the federalism concerns that animate the decisions upon which *Robertson* relied are for the most part inapposite in the District of Columbia, where the U.S. Attorney manages both "local" and federal prosecutions. Other circuits have differentiated between federal and state arrests on the grounds that federal prosecutors should not be held accountable under the Speedy Trial Act for the timing of local arrests and prosecutions over which they have no control and but limited influence. *See, e.g., Iaquinta*, 674 F.2d at 264-

65; *Mejias*, 552 F.2d at 441–42; *cf. United States v. Marler*, 756 F.2d 206, 211 (1st Cir.1985) (discussing same concerns in context of Sixth Amendment right to a speedy trial). In the District of Columbia, however, the U.S. Attorney's power is not subject to the same limitations; following the arrest of a criminal suspect, the U.S. Attorney in this jurisdiction often may elect to bring charges in either D.C. or federal court without the need to consult or obtain the cooperation of any other prosecuting authority. These distinctions are not insignificant and the appellees' arguments are not without force. Nonetheless, *Robertson* remains the law of the circuit and, unless and until it is disturbed by an *en banc* decision of this court or reversal by the Supreme Court, we are bound to apply it faithfully.

The question remains whether *Robertson* is somehow distinguishable from the instant cases. The District Court found *Robertson* inapposite on the grounds that no allegation had been raised in that case of *intentional* prosecutorial manipulation of the indictments in order to circumvent the Speedy Trial Act. *See Holland*, 729 F.Supp. at 130 n. 22; *Roberts*, 726 F.Supp. at 1371. But we can see no ground to distinguish *Robertson* on these terms. The court in *Robertson* discerned no reason to believe that Government counsel would "manipulate the order of arrests" and it found no basis to "impute questionable ethics to the U.S. Attorney"; thus, the court found "it most unlikely that Congress would have intended the adverse practical consequences of treating the two [District and federal] jurisdictions as one for ... purposes" of the Speedy Trial Act. *Robertson*, 810 F.2d at 258. More importantly, however, even assuming a possible exception based on prosecutorial "manipulation," the court in *Robertson* found "nothing in the record [to] support such a claim." *Id.* Nor can we find any wrongful "manipulation" in this case.

Although the trial court suggested the possibility of prosecutorial misconduct in connection with the transfer of cases from Superior Court to federal court, we find absolutely nothing in the record to support

this charge. Indeed, apart from citing the Government's desire to secure the advantage of stiffer sentences under the federal statute—which alone is not evidence of any wrongdoing by the U.S. Attorney—the appellees do not even hint of prosecutorial misconduct in their defense of the District Court's judgments below. Therefore, on the record before us, such a claim cannot furnish a basis for departing from *Robertson* in this case. *See also* parts B.1 and B.2 *infra.*

The only other imaginable basis for distinguishing *Robertson*—and the basis urged upon us by the appellees—is that the arrest in *Robertson* was originally spurred by charges—second-degree murder—for which Robertson could not have been indicted in federal court, whereas the appellees here were arrested on charges that were from the start capable of indictment in either forum. We cannot adopt this approach, however, because there is no suggestion in *Robertson* that this factual peculiarity was integral to the court's reasoning.

Because *Robertson* is the controlling law of this circuit and because it cannot be faithfully distinguished from the facts of the cases before us, we find that the appellees' Speedy Trial Act claims must fail. The appellees' arrests were "District arrests" and did not trigger the Speedy Trial Act requirement that a federal indictment be brought within 30 days of an arrest "in connection with" federal charges.

## B. *Due Process*

The District Court rested its finding that due process had been violated by the case transfers on a wide range of considerations, including the allegedly "arbitrary" way in which the U.S. Attorney had selected the cases to be transferred, the fact that the U.S. Attorney did not promptly notify the defendants of his intention to transfer their cases and, most of all, the enhanced power of the prosecutor to obtain harsher and more definite criminal penalties in the federal forum. Analysis of the appellees' due process claims requires a focused con-

sideration of the prosecutor's practices in light of established due process theories.

Some of the prosecutorial powers about which the District Court expressed concern are clearly beyond constitutional challenge. It is established, for example, that the U.S. Attorney for the District of Columbia may elect to prosecute a given criminal defendant on federal rather than District charges, even though the former carry stiffer penalties. *See Hutcherson v. United States*, 345 F.2d 964, 967 (D.C.Cir.), *cert. denied*, 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965). In fact, the prosecutor may select one alternative charge over another precisely *because* the selected offense carries a more severe sentence. *See United States v. Batchelder*, 442 U.S. 114, 124–25, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979) ("The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause."). Moreover, the prosecutor retains the right before trial to change his mind and to re-indict a criminal defendant on more serious charges if the prosecutor decides that the charges initially brought do not adequately reflect the gravity of the defendant's conduct. *See United States v. Goodwin*, 457 U.S. 368, 381–82, 102 S.Ct. 2485, 2493, 73 L.Ed.2d 74 (1982) ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct.") (footnote omitted). The prosecutor is of course constitutionally prohibited from basing these decisions on an individual defendant's race, sex, religion or previous exercise of a legal right. *See Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985); *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir.), *reh'g granted and opinion vacated*, 816 F.2d 695 (D.C.Cir.), *reh'g denied and opinion reinstated*, 824 F.2d 1240 (D.C.Cir. 1987), *cert. denied*, 485 U.S. 940, 108 S.Ct. 1121, 99 L.Ed.2d 281 (1988). If the prosecutor's exercise of this discretion is rational and nondiscriminatory, however, there generally is no basis for finding a violation of

due process. *Cf. United States v. Brown,* 859 F.2d 974, 977 (D.C.Cir.1988) (per curiam).

■ Nor are we free to embrace the District Court's suggestion that the Sentencing Reform Act and the associated guidelines violate due process by shifting influence over sentencing from the judiciary to the prosecutor. The District Court's opinion is premised upon two beliefs. The first is that due process entitles a criminal defendant to an individualized sentence crafted by the exercise of judicial discretion—a contention that has been uniformly rejected by other circuits.[3] The second, also widely rejected,[4] is that due process cannot tolerate a related enhancement of the prosecutor's influence over sentencing. We do not doubt that judicial discretion in sentencing is of long standing in our criminal system[5] and that there may well be pitfalls, from a standpoint of sound policy, in the substantial enlargement of the prosecutorial role in such decisions.[6] At the same time, however, the Supreme Court has made clear that "federal sentencing ... never has been thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of Government." *Mistretta v. United States,* 488 U.S. 361, 364, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989). "Congress, of course, has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is

subject to congressional control." *Id.* (citation omitted). In the Sentencing Reform Act, Congress exercised that control to narrow considerably judicial discretion in sentencing and we can discern no constitutional impediment to that policy choice. *See Lockett v. Ohio,* 438 U.S. 586, 604–05, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978) (plurality opinion) ("We recognize that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes."). Nor are the guidelines rendered facially invalid simply because prosecutorial influence over sentencing has waxed while judicial influence has waned. The prosecutor's ability to shape a defendant's eventual sentence through the initial selection of charges existed long before the guidelines were enacted, *see Batchelder,* 442 U.S. at 124–25, 99 S.Ct. at 2204–05, and is necessarily enlarged whenever Congress fixes the penalty for a particular offense or narrows the range within which a judge may exercise sentencing discretion. Given the Supreme Court's affirmation of these latter congressional powers, we cannot agree that the Constitution forbids the necessary consequence of their exercise.

Thus, we are constrained to reject the District Court's conclusion that the Sentencing Reform Act and the guidelines promulgated thereunder are fundamentally offensive to due process because they re-

---

**3.** *See United States v. Wilkins,* 911 F.2d 337, 338–40 (9th Cir.1990); *United States v. Sanchez,* 908 F.2d 1443, 1445–46 (9th Cir.1990); *United States v. Weaver,* 906 F.2d 359, 360 (8th Cir. 1990); *United States v. La Guardia,* 902 F.2d 1010, 1013–15 (1st Cir.1990); *United States v. Thomas,* 884 F.2d 540, 542–43 (10th Cir.1989); *United States v. Erves,* 880 F.2d 376, 379 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 416, 107 S.Ct. 381 (1989); *United States v. Bolding,* 876 F.2d 21, 22–23 (4th Cir.1989); *United States v. Pinto,* 875 F.2d 143, 144–45 (7th Cir.1989); *United States v. Allen,* 873 F.2d 963, 964–66 (6th Cir.1989); *United States v. Seluk,* 873 F.2d 15, 16–17 (1st Cir.1989) (per curiam); *United States v. Brittman,* 872 F.2d 827, 828 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 184, 107 L.Ed.2d 140 (1989); *United States v. Vizcaino,* 870 F.2d 52, 53–56 (2d Cir.1989); *United States v. White,* 869 F.2d 822, 825 (5th Cir.) (per curiam), *cert. denied,* 490 U.S. 1112, 109 S.Ct. 3172, 104

L.Ed.2d 1033 (1989); *United States v. Frank,* 864 F.2d 992, 1008–10 (3d Cir.1988), *cert. denied,* 490 U.S. 1095, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989); *accord Ehrsam v. Rubenstein,* 917 F.2d 764, 766–67 (3d Cir.1990) (upholding constitutionality of Pennsylvania's Mandatory Minimum Sentencing Act and analogizing to federal sentencing act).

**4.** *See, e.g., Sanchez,* 908 F.2d at 1445–46; *Weaver,* 906 F.2d at 360; *Thomas,* 884 F.2d at 544.

**5.** *See* Alschuler, *Sentencing Reform and Prosecutorial Power: A Critique of Recent Proposals for "Fixed" and "Presumptive" Sentencing,* 126 U.PA. L.REV. 550, 555–56 (1978); Ogletree, *The Death of Discretion? Reflections on the Federal Sentencing Guidelines,* 101 HARV.L.REV. 1938, 1940–42 (1988).

**6.** *See, e.g.,* Alschuler, *supra* note 5, at 564.

duce judicial discretion and enlarge prosecutorial influence in sentencing. Accordingly, we must also reject the trial court's conclusion that the transfers at issue here violate due process because they subjected the appellees to sentencing under that system.

This leaves only two possible bases for finding a due process violation in these cases: that the prosecutor's transfer decisions were in some sense vindictive and in retaliation for the exercise by a defendant of his legal rights, or that the prosecutor's delay in obtaining a federal indictment was orchestrated deliberately to exact a tactical litigation advantage and substantially prejudiced the defendant.

### 1. Vindictive Prosecution

█ Due process clearly protects criminal defendants against prosecutorial or judicial action intended as a penalty for a defendant's exercise of constitutional rights. *See Blackledge v. Perry*, 417 U.S. 21, 28–29, 94 S.Ct. 2098, 2102–03, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce*, 395 U.S. 711, 723–25, 89 S.Ct. 2072, 2079–80, 23 L.Ed.2d 656 (1969). In light of the importance of this protection, the Supreme Court has articulated a prophylactic rule requiring prosecutors to defend their charging decisions whenever the facts present a "realistic likelihood" that vindictiveness has played some role. *See Blackledge*, 417 U.S. at 27–29 & n. 7, 94 S.Ct. at 2102–03 & n. 7. In the instant cases, however, there is no basis for finding that the transfer decisions were undertaken somehow to *penalize* the appellees for the exercise of their constitutional rights in D.C. Superior Court.

The trial court observed that

[i]n case after case, the particular defendant whose case was transferred had declined to plead guilty in Superior Court prior to his indictment in this Court. Indeed, in several instances, the relationship between the refusal to enter a guilty plea and indictment in federal court was explicitly spelled out.

*Holland*, 729 F.Supp. at 128 (footnotes omitted). These circumstantial findings, however, are plainly insufficient to show a realistic likelihood of prosecutorial vindictiveness. This court pointed out in *Meyer*:

The lesson of *Goodwin* is that proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption [of vindictiveness] in the pretrial context. The rationale supporting the Court's teaching is that this sequence of events, taken by itself, does not present a "realistic likelihood of vindictiveness."

*Meyer*, 810 F.2d at 1246 (citing *United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)). Of course, the sequence of events can support a presumption of vindictiveness if combined with other factors raising suspicion. *See id.* at 1246–47 (applying a presumption of vindictiveness under the totality of the circumstances presented, including the Government's subsequent attempt to drop the added charges once the District Court initiated hearings into the question). Here, however, we have a consistent and nonretaliatory explanation offered by the Government for its decisions to transfer the indictments and no fact beyond the mere sequence of events to support any presumption of improper motivation.

█ Moreover, the fact that the prosecutor warned some defendants in plea negotiations that their cases would be transferred if they did not plead guilty does not violate due process. *See Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978); *Goodwin*, 457 U.S. at 377, 102 S.Ct. at 2490 (due process does "not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged") (construing *Bordenkircher*); *Meyer*, 810 F.2d at 1248. Simply put, here, as in *Goodwin*, "the prosecutor's assessment of the proper extent of prosecution ... [had not] crystallized" at the time of the appellees' initial indictment. *See Goodwin*, 457 U.S. at 381, 102 S.Ct. at 2493. After those charges had been filed, the

prosecutor revised his "assessment of the societal interest in prosecution," *id.* at 380 n. 11, 102 S.Ct. at 2492 n. 11, as part of a large-scale Government initiative concerning drug-related crime in the District of Columbia. Given *Goodwin*'s unequivocal teaching that such a change of course in the pretrial setting does not give rise to a presumption of vindictiveness, a finding of vindictive prosecution could be supported in this case only by evidence of actual vindictive motivation beyond the mere sequence of events. *Cf. Goodwin,* 457 U.S. at 380 n. 12, 102 S.Ct. at 2492 n. 12 ("In rejecting a presumption of vindictiveness, the Court in *Bordenkircher* did not foreclose the possibility that a defendant might prove through objective evidence an improper prosecutorial motive."). The trial judge made no such findings, however, and the appellees have asserted none on appeal. The District Court's finding of a due process violation therefore may not be premised upon vindictive prosecution.

### 2. Pre–Indictment Delay

■ Dismissal of the appellees' indictments might also have been justified on grounds of excessive pre-indictment delay. Such delay offends due process if the defendant can carry the burden of showing
(1) that the government delayed bringing the indictment in order to gain a tactical advantage; and (2) that the delay caused him actual and substantial prejudice.
*United States v. Fuesting,* 845 F.2d 664, 669 (7th Cir.1988); *accord United States v. Gouveia,* 467 U.S. 180, 192, 104 S.Ct. 2292, 2299–2300, 81 L.Ed.2d 146 (1984); *United States v. Delario,* 912 F.2d 766, 769 (5th Cir.1990).

■ Here, the District Court's factual findings are insufficient to satisfy these requirements and the appellees elected not to press this line of reasoning. Although the District Court did offer some generalized observations about the potential impact of delay in typical cases and about advantages gained by prosecutors as a result of delay, these did not amount to the sort of defendant-specific findings necessary to make out a due process violation on grounds of pre-indictment delay. *Cf. Fuesting,* 845 F.2d at 669 ("The allegations of prejudice must be specific, concrete and supported by the evidence—vague, speculative or conclusory allegations will not suffice."). Given the appellees' decision not to press this theory, there appears to be no reason to remand this question to the District Court for more specific factual findings.

In sum, employing established constitutional theories, we are unable to sustain the District Court's conclusion that the transfers at issue here violated the due process clause of the Fifth Amendment.

### C. *The Sixth Amendment*

■ Finally, at oral argument, the appellees renewed their claim that the delay between their arrests and their eventual federal trials violated their Sixth Amendment rights to a speedy trial. This presents a distinctly different question from that raised by the appellees' statutory speedy trial claim. The constitutional calculus, unlike the statutory analysis, turns not on precisely defined time limitations but rather on a broad balancing of considerations. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972). This balancing necessarily entails a case-by-case consideration of the relevant factors, including the length of the delay before trial, the reason for the delay, the vigor with which the defendant has asserted his speedy trial rights and the degree of prejudice to the defendant. *See id.; see also United States v. Loud Hawk,* 474 U.S. 302, 313–16, 106 S.Ct. 648, 655–57, 88 L.Ed.2d 640 (1986); *United States v. Jones,* 524 F.2d 834, 846–52 (D.C.Cir.1975); *United States v. Sarvis,* 523 F.2d 1177, 1181–84 (D.C.Cir.1975). This court has once before upheld the dismissal of indictments for speedy trial violations where the Government "shuttled" cases between two federal district courts. *See United States v. Lara,* 520 F.2d 460, 464–65 (D.C.Cir. 1975).

Moreover, as Government counsel readily conceded, Sixth Amendment analysis would comprehend the entire time span from the

appellees' indictment in Superior Court to the dismissal of the federal charges against them, given that the same federal prosecutors controlled both prosecutions. *See United States v. Liddy,* 542 F.2d 76, 79 (D.C.Cir.1976). It is this element of continuous control by a single prosecuting authority that distinguishes the instant cases from those in other circuits holding that an initial arrest and indictment by state authorities does not trigger the Sixth Amendment speedy trial clock for purposes of a subsequent federal prosecution. *See, e.g., United States v. Gomez,* 776 F.2d 542, 549 (5th Cir.1985); *United States v. Marler,* 756 F.2d 206, 210–13 (1st Cir.1985); *United States v. Romero,* 585 F.2d 391, 398–99 (9th Cir.1978), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979); *United States v. Cordova,* 537 F.2d 1073, 1076 (9th Cir.) (per curiam) ("There is no indication that the state arrest and prosecution constituted a mere temporary device used to restrain appellant until federal authorities might choose to prosecute.") (internal quotation marks omitted), *cert. denied,* 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976).

■ Although the appellees raised their Sixth Amendment claim below, the District Court confined its analysis to the Fifth Amendment and statutory questions. It is therefore necessary to remand to the District Court for full consideration of whether the transfers at issue here violated the appellees' Sixth Amendment rights. Such consideration will, of course, require a highly fact-specific analysis of the appellees' own particular cases, guided by the balancing test prescribed by the Supreme Court in *Barker.*

### III. Conclusion

For all of the foregoing reasons, we reverse the District Court's conclusions that the "transfers" at issue here violated the Speedy Trial Act and the due process clause of the Fifth Amendment. We remand to the District Court, however, for initial consideration of the appellees' claims that they were deprived of their Sixth Amendment rights to a speedy trial.

*So ordered.*