952 F.2d 404
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francis DABELKO, Alfred Conti, and Richard Dabelko,
Defendants-Appellants.
 Nos. 90-3926, 90-3969 and 90-4126.
 United States Court of Appeals, Sixth Circuit.
 Jan. 9, 1992.
 
 Before BOGGS and ALAN E. NORRIS, Circuit Judges, and BERTELSMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 On June 13, 1989, Richard DaBelko, Francis DaBelko, and Alfred Conti and others were indicted by a federal grand jury for conspiracy to distribute cocaine from at least as early as March 1989, and continuing through May 17, 1989, in violation of 21 U.S.C. § 846. On November 29, 1989, a superseding indictment was returned, which changed the period of the conspiracy to extend through November 6, 1989. The defendants were also indicted for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and illegal use of a communication facility, in violation of 21 U.S.C. § 843(b). All three pled not guilty and did not testify at trial. On June 19, 1990, a jury returned a guilty verdict against all three co-defendants on all counts. Francis DaBelko was sentenced to 121 months in prison, Conti was sentenced to 135 months in prison and Richard DaBelko was sentenced to 292 months in prison. All defendants filed a timely appeal. We affirm on all counts.
 
 
 2
 * Evidence of defendants' guilt of possession of and conspiracy to distribute cocaine came from searches of their residences as well as court-authorized monitoring of their conversations, extensive law enforcement surveillances, and the testimony of co-conspirator Howard Blum. Executing a search warrant on Richard Dabelko's residence, the police found two scales, both covered with a white powdery substance that later tested positive for cocaine, three weapons, and over $35,000 in cash. The search warrant on Francis Dabelko's home produced 1,900 grams of cocaine and seven brown paper bags with his finger prints, as well as a personal telephone directory containing the telephone number of an identified supplier of cocaine. At Conti's home, the police found 19 grams of cocaine, drug paraphernalia and a scale covered with white powder. The police also confiscated a suitcase containing approximately 810 grams of cocaine from the house of Conti's sister.
 
 
 3
 The district court had authorized the interception of phone conversations over the telephones located at Richard Dabelko's residence, Conti's residence, and Howard Blum's jewelry business. It also authorized the installation of a listening device at Blum's business. Twenty conspiratorial conversations involving some or all of the three appellants were played to the jury. Topics of conversation included meetings to pick up money to pay their cocaine supplier, meetings to pick up the cocaine, delivering the cocaine to the "stash" house, discussing debts from the sale of cocaine, and other topics related to conspiracy to distribute cocaine.
 
 
 4
 Finally, co-conspirator Howard Blum testified regarding the workings of the conspiracy. Based on Blum's cooperation with federal law enforcement officials, a superseding indictment was filed against Richard DaBelko. The government informed Richard that they intended to request the court to enhance his penalties based upon his prior conviction for drug trafficking, if he was convicted for either conspiracy or possession of cocaine with intent to distribute.
 
 
 5
 The defendants raise many issues on appeal, including the following: whether a wiretap was improperly admitted into evidence; whether the government abused the grand jury process by securing a superseding indictment; whether evidence occurring prior to March 1989 was improperly admitted; whether a taped conversation was improperly admitted into evidence; whether the trial court improperly denied defendants the opportunity to recall government witnesses; and whether the trial court improperly applied the federal sentencing guidelines in several respects, especially by not departing downward in sentencing the defendants. We affirm the defendants' convictions and sentences in all aspects. As the district court opinion correctly disposed of all issues, we will address in detail the two issues that warrant such discussion, namely whether the district court erred in refusing to allow the defendants to recall a government witness and whether the court properly applied the law in sentencing the defendants.
 
 II
 
 6
 On appeal, all three co-defendants argue that the district court improperly denied their motion for a mistrial and/or the opportunity to recall and cross-examine government witness Howard Blum. The issue of recall arose after Dominic Paolone was called as a defense witness and testified that Howard Blum, a government witness, offered to sell him cocaine after Blum had been released from pretrial detention and had become a government informant. Defendants claim that this testimony was exculpatory and impeaching against Blum and that it was error not to permit them to recall Howard Blum for re-cross-examination. Defendants' counsel did not learn of this offer to sell cocaine between Paolone and Blum until Paolone testified. Defendants argue that this information is exculpatory because it shows that Blum knew that setting somebody else up would give him a more favorable deal, which would in turn undermine Blum's credibility as a witness, by indicating that he could have made up all of his testimony in an attempt to reduce his culpability.
 
 
 7
 The issue presented is whether Paolone's testimony was exculpatory. The suppression by the prosecution of evidence that is both favorable to the defendant and material to either guilt or punishment violates due process. Brady v. Maryland, 373 U.S. 83 (1963). Thus, the information that Blum offered to sell cocaine to Paolone can be found to be exculpatory only if it was favorable, and material to the defendants' guilt or punishment.
 
 
 8
 For the following reasons, we hold that the information revealed in Paolone's testimony was not exculpatory and therefore the district court did not abuse its discretion by not allowing recall of the witness for re-cross-examination. First, the government knew about Blum's offer to sell cocaine to Paolone, and recognized that in order for Blum to maintain his position with the "criminal element" he had to continue to be a cocaine dealer. This need to maintain criminal credibility was exacerbated by the fact that Paolone was spreading the word that Blum was a government "snitch" and this attempted drug transaction was part of Blum's effort to regain his credibility with Paolone. And, importantly, no drug transaction ever occurred and no cocaine was actually sold. Thus, we conclude that this incident would not be favorable or material to the defendants' guilt or punishment. Additionally, even if the evidence was exculpatory, the government did not conceal the evidence, but made it available to the jury.
 
 
 9
 Defendants also claim a right to confront Blum face to face with this new evidence and that the additional information would have impeached Blum. Noting that the right of confrontation "includes both the opportunity to cross-examine and the occassion for the jury to weigh the demeanor of the witness," Barber v. Page, 390 U.S. 719, 725 (1968), defendants claim that their right to cross-examination was in effect restricted by the district court's denial of their request for re-cross-examination.
 
 
 10
 Rule 611(b), FedR.Evid., on the Mode and Order of Interrogation and Presentation defines the scope of cross-examination as "limited to the subject matters affecting the credibility of the witness...." We have held that "[u]nder Rule 611, a trial judge has considerable discretion and a judge's ruling will not be the basis for reversal of a criminal conviction unless a defendant's substantial rights are affected." United States v. Moore, 917 F.2d 215, 221 (6th Cir.1990), cert. denied, 111 S.Ct. 1590 (1991). Here, given the non-exculpatory nature of the testimony and the fact that Paolone had already been cross-examined once, the defendants' substantial rights were not affected by the denial of the opportunity for re-cross-examination. We hold the district court did not abuse the considerable discretion it has under Rule 611 when it denied the defendants' motion for re-cross-examination.
 
 III
 
 11
 A number of sentencing issues warrant discussion on appeal, especially whether the trial court properly followed the federal sentencing guidelines when it refused to depart downward on the defendants' sentences.
 
 
 12
 * The defendants main complaint is that Howard Blum, the acknowledged leader of the conspiracy, was only sentenced to 96 months while Francis DaBelko was sentenced to 121 months, Alfred Conti to 135 months and Richard DaBelko to 292 months. All three defendants argue that the court should have departed downward to avoid disparity of sentences between them and Howard Blum.
 
 
 13
 We recently held that the district court may not depart downward for the sole purpose of harmonizing sentences of co-defendants where the defendants have dissimilar criminal records and conduct. United States v. Parker, 912 F.2d 156, 157-58 (6th Cir.1990). Howard Blum pleaded guilty to one count of conspiracy and was sentenced to eight years in prison. DaBelko claims Blum had at least two crimes of violence on his record, which would have made Blum a career offender under U.S.S.G. § 4B1.1, made his base offense level 37 for the conspiracy, placed him in Criminal History Category VI and placed him in the sentencing guideline range of 360 months to life. However, in contrast to Richard Dabelko's claims, the district court's probation department determined that Blum was not a career offender. For, while Blum had prior criminal convictions for conspiracy to commit bank larceny, burglary, and possession of a firearm in the commission of a felony, none of these were crimes of violence under U.S.S.G. § 4B1.2(1)(ii).
 
 
 14
 Instead, the district court's probation department determined Blum's criminal history points to be six, which placed him in Criminal History Category III. Blum got a four-level increase for his role in this conspiracy, but got a two-level decrease for acceptance of responsibility. Finally, the government recommended a six-level reduction for his substantial cooperation with the government.
 
 
 15
 The difference in the sentencing between Blum and the co-defendant's results from the following dissimilarity of criminal records and conduct: 1) Blum's cooperation with the government; 2) the trial court's awareness of additional quantities of cocaine that could not be used against Blum under U.S.S.G. § 1B1.8, but could be considered by the court as relevant conduct under § 1B1.3 as it relates to these appellants; 3) Blum was credited for accepting responsibility while the appellants were not; 4) Richard DaBelko had a prior drug trafficking conviction, which pursuant to 21 U.S.C. § 851 enhances the penalty; and 5) Richard Dabelko's sentence was increased because a firearm was found with his scales and money as part of his drug trafficking activity. Given these factors, the district court did not err in refusing to depart downward for the sole purpose of harmonizing sentences where the defendants had dissimilar criminal records and conduct.
 
 B
 
 16
 Francis DaBelko and Alfred Conti claim that the sentencing guidelines deprive them of due process of law because the prosecutor has the discretion to choose the crime with which the defendant is charged. However, defendants acknowledge in their reply brief that the cases they had cited to support their unconstitutionality claim have been overruled by United States v. Mills, 925 F.2d 455 (D.C.Cir.1991), vacated, reh. en banc granted, 933 F.2d 1042 (D.C.Cir.1991), which rejected the notion that the guidelines are fundamentally offensive to due process because they reduce judicial discretion and enlarge prosecutorial influence in sentencing. Mills, 925 F.2d at 462-63.
 
 
 17
 So instead, defendants argue that it was the exercise of a basic constitutional right, the right to a trial, that caused their long sentences. Mills, 925 F.2d at 463. Therefore, the defendants reason that the sentencing guidelines should be found an unconstitutional due process violation, because, in effect, they punish the defendants for exercising their constitutional rights to a jury trial.
 
 
 18
 However, this is too expansive an interpretation of the notion of sentencing as violating defendants' exercise of constitutional rights. Under their reasoning, any sentence could be deemed a violation. Instead, to prove such a violation, the defendant must allege and prove vindictiveness on the part of the prosecutors. Mills, 925 F.2d at 463. The defendants do neither here. Indeed, the mere "proof of prosecutorial discretion to increase charges after defendant has exercised a legal right does not alone give rise to a presumption [of vindictiveness] in the pre-trial context." Ibid. The Mills court held that, while the sequence of events can support vindictiveness when combined with other factors raising suspicion, a consistent and non-retaliatory explanation offered by the government combined with lack of other external facts beyond the sequence of events did not support the charge of vindictiveness. Ibid.
 
 C
 
 19
 Alfred Conti and Richard DaBelko argue that the trial court erred in considering for sentencing purposes cocaine not charged as part of the conspiracy. Although only three kilograms of cocaine were seized, the trial court found by a preponderance of the evidence that the conspiracy involved the distribution of 40 kilograms of cocaine. Defendants claim the evidence does not support this computation and that the district court erred in considering these "amounts" of cocaine under "relevant conduct."
 
 
 20
 However, "the quantity of cocaine is not an element of the offense of conspiracy to distribute cocaine." United States v. Moreno, 899 F.2d 465, 474 (6th Cir.1990).
 
 
 21
 The defendant need not be convicted of conspiring to distribute over five kilograms of cocaine for the judge to be able to make such a determination at sentencing. This court has held that conduct beyond the count of conviction may be considered at the sentencing level.
 
 
 22
 Moreno, 899 F.2d at 474, citing United States v. Sailes, 872 F.2d 735 (6th Cir.1989). The judge is not bound at sentencing by the jury's findings. Moreno, 899 F.2d at 473. However, "[t]he prosecution bears the burden of establishing the amount of cocaine (for sentencing purposes) by a preponderance of the evidence." United States v. Nelson, 922 F.2d 311, 316. Under Rule 52(a), Fed.R.Civ.P., the district court's findings of fact should not be reversed unless clearly erroneous. The district court's factual findings that underlie a sentencing decision cannot be overturned unless clearly erroneous. United States v. Duncan, 918 F.2d 647, 650 (6th Cir.1991), cert. denied, 111 S.Ct. 2055 (1991).
 
 
 23
 The indictment charges defendants with a conspiracy beginning as early as March 1989 through May of 1989. The defendants argue that the amount of cocaine involved from March to May 1989 was 6.5 kilograms, which would make their base offense level 32. At trial, however, the conspiracy was recognized as extending back at least as far as early 1987, which expanded the amount of cocaine to 40 kilograms and raised the base offense level to 34.
 
 
 24
 Defendants argue that even if testimony dating back to early 1987 can be included, the evidence at trial does not support the computation of 40 kilograms, as Blum's testimony lacked specificity in amount and dates or details surrounding the drug deliveries. See United States v. Phillippi, 911 F.2d 149 (8th Cir.1990), cert. denied, 111 S.Ct. 702 (1991) (held clearly erroneous for district court to compute the relevant conduct as 10 kilograms when defendant had been indicted for less and where the relied-upon references made by the informant were sketchy, rough estimates).
 
 
 25
 However, here the trial court was not clearly erroneous in finding by the preponderance of the evidence that the conspiracy involved the distribution of 40 kilograms of cocaine. Blum testified about the date of the beginning the conspiracy, who the supplier was (Carol Eckman), how frequently trips were made (every 6 to 8 weeks), the amount of cocaine received per trip (3 to 5 kilograms) and the length of the relationship (lasted until August 1988). Blum also testified about the defendants' use of a new supplier (Philip Christopher) starting in September 1988, how often transactions occurred with him (again every 6 to 8 weeks) and the amount of cocaine (3 kilograms). Making conservative estimates from this information (3 kilograms every 8 weeks) a total of 27 kilograms (nine trips at 3 kilograms) and 15 kilograms (5 trips at 3 kilograms) creates a conspiracy involving at a minimum of 42 kilograms. Given these figures, the trial court was not clearly erroneous in basing its sentencing calculations on 40 kilograms of cocaine.
 
 D
 
 26
 Richard Dabelko claims that the trial court erred in enhancing his offense for his being the manager and supervisor of his brother, Francis DaBelko. Under the Sentencing Guidelines, "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity ... increase by two levels." U.S.S.G. § 3B1.1(c). The trial court found by the preponderance of the evidence that
 
 
 27
 certainly it appeared that during this case he's [Richard] the one that told his brother what to do, as opposed to his brother telling him what to do.... Well, when you tell your brother to go here or go there in the course of a drug transaction, or provide money, it seems to me that that sets you apart from somebody else that's also charged and found guilty.
 
 
 28
 J.A. at 491.
 
 
 29
 Richard claims that he and Francis were equal partners in crime. While it is clear that Blum was the main organizer, Richard supplied money and Francis picked up the cocaine. Richard points to the following facts to demonstrate this "brotherly equality:" Blum called Francis directly a number of times; cocaine was found at Francis's house while no cocaine was found at Richard's; none of the taped conversations indicate that Richard was more a leader than Francis. "Merely because Francis drove a truck and handled cocaine does not transform him into a person who was supervised by Richard."
 
 E
 
 30
 Richard DaBelko also claims that the trial court erred in enhancing his offense level for being in possession of firearms during the commissioning of a drug trafficking offense. Section 2D1.1(b)(1) of the Sentencing Guidelines provides that defendant's based level should be raised two levels where a defendant possessed a firearm during the commission of a drug trafficking offense. Two handguns had been found in two seperate bedrooms of Richard Dabelko's residence. No drug transaction was ever alleged to have occured in his residence.
 
 
 31
 "The possession of a firearm during the commission of the offense establishes a presumption that the possession is connected with the offense." Moreno, 899 F.2d at 470. The defendant can only overcome this presumption if he can show that "it is clearly improbable that the weapon was connected with the offense." Moreno, 899 F.2d at 470, citing U.S.S.G. § 2D1.1(b)(1), Application Note 3.
 
 
 32
 Moreno clearly supports the district court's enhancement of Richard's sentence based on the possession of firearms. The court upheld Moreno's enhanced sentence based upon the evidence that "Moreno possessed automatic weapons at his temporary residence during the time that the conspiracy was ongoing." Moreno, 899 F.2d at 470. Richard's reliance on United States v. Vasquez, 874 F.2d 250 (5th Cir.1989) (enhanced sentencing of a defendant convicted of purchasing drugs from undercover agents where the only gun was in the defendant's house several miles away was improper) is misplaced as it dealt with a drug purchase, not a drug conspiracy and possession with the intent to distribute.
 
 F
 
 33
 Finally, Richard DaBelko claims that the district court erred in overruling his motion to dismiss the enhancing "information" relating to his prior convictions that was filed shortly before trial. 21 U.S.C. § 851(a)(1) provides:
 
 
 34
 No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions relied upon....
 
 
 35
 Also, under 21 U.S.C. § 851(a)(2),
 
 
 36
 [a]n information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed.
 
 
 37
 Thus, an information that creates an enhancement greater than three years is only allowable if defendant waived the right to indictment or was already indicted for the offense.
 
 
 38
 Defendant wants us to read § 851(a)(2) as saying that an information is only constitutional if defendant has waived his right to a grand jury. He claims the government did not afford him the opportunity to waive or permit the government to establish a prior conviction by presentment to a grand jury. However, under the statute an information may be filed where, as here, the defendant "was afforded prosecution by indictment for the offense for which such increased punishment may be imposed." 21 U.S.C. § 871(a)(2). Richard DaBelko had already been indicted for the crime in this case, the offense for which the punishment is being imposed.
 
 
 39
 In the alternative, defendant argues that he never received a copy of the information. Although he admits this information was served on his defense counsel, Richard maintains that he was never advised of it by his counsel and did not receive a copy of it himself. He claims this lack of service on him personally is an unconstitutional violation of due process. However, § 851(a)(1) provides that the government may serve the information with "counsel for the person." Even if defendant was not informed, he was not prejudiced because at his arraignment he was advised that he faced up to life imprisonment if convicted and his actual sentence, although in excess of the statutory minimum by the information, was far less than the maximum possible life sentence. For the above reasons, we hold the district court was not clearly erroneous in its sentencing of defendant Richard Dabelko.
 
 IV
 
 40
 With regard to the other points raised on appeal, we have considered them fully and find them to be without merit. A brief recitation of these points will suffice.
 
 
 41
 With regard to the introduction of a challenged tape recording into evidence, the trial judge ordered the deletion of inaudible portions and determined that the remaining portions were sufficiently audible for use as evidence. The trial judge did not clearly err in making this determination, and our cases require no more. United States v. Robinson, 707 F.2d 872, 879.
 
 
 42
 The government did provide all required taped conversations, and its failure to identify, without request, exactly which conversations would be used in evidence was not in error. The application for the wiretap was adequate, and the evidence to convict defendant Francis Dabelko was sufficient, particularly in light of the deference due to the jury's verdict on matters of credibility.
 
 
 43
 Finally, the government did not abuse the grand jury process by returning additional indictments based on ongoing investigations. There was no error in introducing evidence prior to March of 1989, when the indictment refers to a conspiracy "beginning from at least as early as March of 1989." (emphasis added).
 
 V
 
 44
 For all of the above reasons, we AFFIRM the district court's conviction and sentencing of the three co-defendants.
 
 
 
 *
 The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation