UNITED STATES of America, Appellee

v.

Joseph L. GERALD, a/k/a Michael Lee Jones, Jr., Appellant.

No. 90–3096.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 7, 1993.

Decided Oct. 19, 1993.

---

William J. Garber, Washington, DC (appointed by the court) argued the cause for appellant. With him on the briefs was Dennis M. Hart, Washington, DC.

Elizabeth H. Danello, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With her on the brief were Jay B. Stephens, U.S. Atty. at the time the brief was filed, John R. Fisher, Roy W. McLeese III, and L. Jackson Thomas II, Asst. U.S. Attys., Washington, DC.

Before BUCKLEY, GINSBURG, and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Having been arrested by federal officers, charged with the violation of a District of Columbia statute, and indicted on federal charges five months later, appellant Joseph L. Gerald asserts a violation of the Speedy Trial Act. Because the Act only applies to an arrest that is accompanied by federal charges and because Gerald's other arguments are unpersuasive, we affirm his conviction.

## I. BACKGROUND

On February 24, 1989, a federal magistrate issued a search warrant for 217—51st Street, Northeast, Washington, D.C., based on an

affidavit alleging violations of federal narcotics laws. Members of the United States Park Police executed the warrant. During their search, they discovered firearms and narcotics and arrested three individuals, including Gerald. Gerald was taken to the District of Columbia Superior Court the next day, a Saturday, and charged with possession of cocaine with intent to distribute in violation of D.C.Code § 33–541(a)(1). Subsequently, a Superior Court Hearing Commissioner found probable cause and bound Gerald's case over to a Superior Court grand jury.

Because Gerald had been implicated in another case involving murder and was considered by federal prosecutors to be dangerous, his drug case was assigned to the Drug Homicide Strike Force in the office of the U.S. Attorney for the District of Columbia, which has the authority to bring criminal actions in either the United States District Court or the D.C. Superior Court. The Government subsequently decided that Gerald's recidivism and the serious nature of his past and pending charges warranted his prosecution under federal law. Accordingly, his case was presented to a federal grand jury which, on August 1, 1989, returned an eight-count indictment charging him with various federal drug and firearm violations. These charges were based on the same conduct underlying Gerald's Superior Court prosecution. In response to the Government's motion, the Superior Court dismissed the D.C. charge against Gerald on August 23, 1989.

Gerald's trial began on January 17, 1990. Eight days later, the jury found him guilty on five counts. Applying the federal sentencing guidelines, the court sentenced him to a total of 375 months in prison, which is substantially more than the sentence he would have received had he been convicted of the D.C. offense in the Superior Court. Gerald filed this appeal, which we twice held in abeyance—once pending our decision in *United States v. Mills*, 925 F.2d 455 (D.C.Cir.1991) ("*Mills I*"), and again pending its resolution *en banc*. *United States v. Mills*, 964 F.2d 1186 (D.C.Cir.1992) (*en banc*) ("*Mills II*").

## II. DISCUSSION

### A. The Speedy Trial Act

■ Section 3161(b) of the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.* (1988) ("STA") provides:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

*Id.* § 3161(b). In *Mills II*, we held that "only an arrest in connection with *federal* charges triggers § 3161(b) of the Speedy Trial Act." 964 F.2d at 1193 (emphasis in original).

Gerald tries to avoid the necessary implications of this holding by distinguishing the facts of his case from those in *Mills II*. He notes that while Mills was arrested by D.C. authorities, he was arrested by federal officers engaged in a search pursuant to a federal warrant that was issued on suspicion of violations of federal law. He maintains that he was held overnight and taken before the Superior Court and charged with violations of D.C. law because a federal magistrate was not available at the time.

In further support of his position that his arrest by the Park Police was sufficient in itself to bring him under the STA, Gerald cites several cases in which courts have stated that a federal arrest would start the STA clock. *See, e.g., United States v. Adams*, 694 F.2d 200, 202 (9th Cir.1982) ("only a *federal* arrest will trigger the running of the time period set forth in 18 U.S.C. § 3161(b)") (emphasis in original); *United States v. Iaquinta*, 674 F.2d 260, 264 (4th Cir.1982) ("it is only a *federal* arrest, not a state arrest, which will trigger the [STA]") (emphasis in original). In each of these cases, however, the issue before the court was whether a state arrest followed by a federal indictment fell within the statute. In affirming that only a federal arrest would start the clock, these courts did not assert that a federal arrest, without more, would do so. Given the specific question to be decided in those cases, it was unnecessary for the courts to mention the second statutory condition, namely, that

the federal arrest be "in connection with" a federal charge.

The Government in its turn attempts to minimize the federal character of the arrest by suggesting that the Park Police should not be considered as purely "federal" because they are empowered to enforce District of Columbia as well as federal law and are authorized to make arrests for violations of the former outside of federal parks and reservations. Whatever the character of the arrest, however, and notwithstanding the other distinctions that Gerald draws between his case and *Mills II*, he cannot evade the indisputable fact that both Mills and he were charged upon arrest with offenses under the criminal statutes of the District of Columbia. As we stated in *Mills II*, "[i]f ... the arrest was accompanied by a complaint charging violations of the D.C. (not U.S.) Code, it was not 'in connection with' *federal* charges." 964 F.2d at 1189 (emphasis in original). Accordingly, we reject Gerald's claim that a federal arrest that is unaccompanied by a federal charge will trigger section 3161(b) of the STA. *See United States v. Bagster*, 915 F.2d 607, 609 (10th Cir.1990) (finding that STA not implicated where federal arrest not followed by filing of federal charges in connection with arrest); *United States v. Candelaria*, 704 F.2d 1129, 1130–31 (9th Cir.1983) (same); *United States v. Kubiak*, 704 F.2d 1545, 1548 (11th Cir.1983) (same).

## B. Sixth Amendment, Due Process, and Rule 41(d)

■ Gerald offers several additional grounds for setting aside his convictions. First, he argues that the delay of approximately eleven months between his arrest and trial was excessive and therefore in violation of his Sixth Amendment right to a speedy trial. We reject this claim for the following reasons: Several months of that delay were attributable to the consideration of Gerald's pretrial motions (in fact, he moved for an extension of time within which to file them); he provides no indication that he was prejudiced by the delay; and under the circumstances of this case, we do not find the delay so long that it gives rise to a presumptive violation of his Sixth Amendment rights. *See*

*Barker v. Wingo*, 407 U.S. 514, 530–31, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972) (discussing factors to be weighed in assessing Sixth Amendment speedy trial claim such as defendant's contribution to delay, prejudice to defense, and length of delay); *United States v. Ransom*, 465 F.2d 672, 673 (D.C.Cir.1972) (identifying "a delay of more than one year between arrest and trial as giving 'prima facie merit' to a Sixth Amendment challenge") (citations omitted).

■ Second, Gerald advances two grounds for asserting violations of due process: He argues that the Government's transfer of his case to federal court was improper because it was made for the purpose of taking advantage of the higher penalties available under the U.S. Sentencing Guidelines; he also claims that the transfer was motivated by prosecutorial vindictiveness. Unfortunately for Gerald, we recently rejected his first ground. In *Mills I*, we stated that "the prosecutor may select one alternative charge over another precisely *because* the selected offense carries a more severe sentence." 925 F.2d at 461 (emphasis in original); *see also Mills II*, 964 F.2d at 1188 n. 3 (preserving this holding in *Mills I* ).

■ As for the second ground, we observed in *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C.Cir.1987), that " '[p]rosecutorial vindictiveness' is a term of art with a precise and limited meaning. The term refers to a situation in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights." *Id. See also Mills I*, 925 F.2d at 463 ("Due process clearly protects criminal defendants against prosecutorial or judicial action intended as a penalty for a defendant's exercise of constitutional rights."). Here, Gerald has failed to identify any legal right whose exercise the Government sought to penalize by transferring his case to federal jurisdiction. Thus the second basis for his due process claim must also fail.

■ Finally, Gerald argues that the evidence secured by the Park Police should have been suppressed because the officers had failed to promptly return the search warrant that led to his arrest, as required by

Rule 41(d) of the Federal Rules of Criminal Procedure. True, the warrant was not returned until five months after the search had been conducted. This delay, however, does not provide grounds for the suppression of the evidence obtained pursuant to the warrant. In *United States v. Anderson*, 851 F.2d 384, 390 (D.C.Cir.1988), we noted that "technical defects in [a] ... warrant d[o] not implicate in any way the essential requirements for a valid federal search warrant." If non-material defects in the warrant itself will not support suppression, absent a showing of prejudice, the same is certainly true of a ministerial error of this kind. As Gerald has not shown that he was harmed by the late return of the warrant, we reject this claim as well.

### III. CONCLUSION

For the foregoing reasons, Gerald's conviction is

*Affirmed.*